BART M. DAVIS
United States Attorney

CHRISTINE ENGLAND
Assistant United States Attorney
U.S. Attorney's Office, District of Idaho
800 Park Boulevard, Suite 600
Boise, Id 83712
Tel: (208) 334-1184; Fax: (208) 334-1414
E-mail: christine.england@usdoj.gov

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

BARCLAY T. SAMFORD
LUTHER L. HAJEK
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel:  (303) 844-1376 (Hajek)
      (303) 844-1475 (Samford)
E-mail: luke.hajek@usdoj.gov
        clay.samford@usdoj.gov

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| TUGAW RANCHES, LLC, | )<br>) Case No. 4:18-cv-00159-CWD<br>) |
| Plaintiffs, | ) |
| v. | ) **MEMORANDUM IN SUPPORT OF**<br>) **MOTION TO DISMISS** |
| UNITED STATES DEPARTMENT OF<br>INTERIOR, *et al.* | )<br>)<br>) |
| Defendants. | )<br>) |

**INTRODUCTION**

In 2015 the United States Department of Interior Bureau of Land Management ("BLM") and the United States Department of Agriculture Forest Service amended land use plans for federal lands in eleven western states to protect the Greater Sage Grouse and its habitat. Plaintiff alleges that the BLM and the Forest Service are violating the Congressional Review Act because they have not submitted the plan amendments to Congress for review pursuant to the Act. This Court lacks jurisdiction to hear this claim because the Congressional Review Act prohibits judicial review of claimed omissions in violation of the Act. This case must therefore be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**BACKGROUND**

I.   **Greater Sage Grouse Plan Amendments**

The BLM and the Forest Service (the "Agencies") manage the federal lands within their jurisdiction through a staged process of planning and management. The first stage is the development of land use plans, which set goals and objectives for the management of particular areas. *See* 43 U.S.C. § 1712 (BLM); 16 U.S.C. § 1604(a) (Forest Service). Land use plans may be changed through amendment or revision. *See* 43 C.F.R. § 1610.5-5 (BLM); 36 C.F.R. § 219.13 (Forest Service). At the second stage, the Agencies propose, analyze, and approve project-level decisions: for example, approving a grazing permit. *See* 43 C.F.R. § 1610.5-3(a) (BLM); 16 U.S.C. § 1604(i) (Forest Service). Project-level decisions must be consistent with the applicable land use plan and comply with the National Environmental Policy Act ("NEPA") and other laws. *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 729-30 (1998); *see also* 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3.

In 2015, the BLM and the Forest Service, after a public planning process and analysis under NEPA, approved amendments to the land use plans in eleven Western States intended to protect the Greater Sage Grouse and to prevent the listing of the species as endangered. The BLM and the Forest Service are now both in the process of administratively revisiting and potentially revising or amending the 2015 Plan Amendments.[1]

## II.   The Congressional Review Act

The 1996 Congressional Review Act ("CRA"), 5 U.S.C. §§ 801-808, adds a new chapter to the Administrative Procedure Act ("APA") that establishes a set of procedures by which Congress may review and overturn agency rules. The CRA provides that before a rule can take effect, an agency must submit a report to both houses of Congress and the Comptroller General containing a copy of the rule, a concise general statement relating to the rule, and the proposed effective date of the rule. *Id.* § 801(1).

Upon receipt of such a report, Congress has a specified time period to enact a joint resolution disapproving the rule. *See id.* § 802. If both Houses of Congress adopt a joint resolution of disapproval, the resolution proceeds to the President for signature or veto. If the resolution is signed by the President (or if the President's veto is overridden by Congress) then the rule "shall not take effect (or continue)." *Id.* § 801(b)(1). Moreover, the agency may not

---

[1]  *See* [BLM] Notice of Intent To Amend Land Use Plans Regarding Greater Sage-Grouse Conservation, 82 Fed. Reg. 47,248 (Oct. 11, 2017); [Forest Service] Amendments to Land Management Plans for Greater Sage-Grouse Conservation, 82 Fed. Reg. 55,346 (Nov. 21, 2017). Most recently, on May 2, 2018, the BLM released Draft Resource Management Plan Amendments ("RMPAs") and Draft Environmental Impact Statements ("DEISs") for Greater Sage-Grouse Conservation. *See* https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=90121.

reissue the rule or issue a new rule "that is substantially the same" unless specifically authorized by a law enacted after the resolution disapproving the original rule. *Id.* § 801(b)(2).

Finally, and of particular relevance here, the CRA broadly provides that "[n]o determination, finding, action, or *omission* under this chapter shall be subject to judicial review." *Id.* § 805 (emphasis added).

### III. Plaintiff's Complaint

Plaintiff asserts a single claim for relief, namely, "Agency Action Unlawfully Withheld or Unreasonably Delayed." Compl. at 18. Plaintiff contends that the "Sage Grouse Rules" (i.e., the above-described 2015 Plan Amendments) "were not submitted to Congress before going into effect, as required by the CRA," Compl. ¶ 58 (citing 5 U.S.C. § 801(a)(1)(A)); that "[s]ubmission of the rules as required is 'agency action unlawfully withheld or unreasonably delayed,'" Compl. ¶ 59 (quoting 5 U.S.C. § 706); and that the Agencies "must submit the Sage Grouse Rules to Congress pursuant to the CRA," Compl. ¶ 60. Plaintiff seeks commensurate declaratory relief: "a declaration that submission of the Sage Grouse Rules to Congress under the CRA is agency action unlawfully withheld or unreasonably delayed" and "a declaration that Defendants must submit the Sage Grouse Rules to Congress without delay." Compl. at 18 (Prayer for Relief); *see also id.* (seeking "an injunction requiring Defendants to submit the Sage Grouse Rules to Congress under the CRA").

## LEGAL STANDARDS

Defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). When, as here, a defendant challenges jurisdiction on the face of the complaint, the burden of establishing jurisdiction rests on the plaintiff, and the complaint must be dismissed unless it includes allegations of facts sufficient to invoke federal jurisdiction. *See*

3

*Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  While a court weighing a Rule 12(b)(1) motion to dismiss must give plaintiffs all favorable inferences that may be drawn from the allegations of fact, it need not accept as true the plaintiff's legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Plaintiff contends that the Sage Grouse Plan Amendments are "rules" subject to the CRA and that the Agencies have violated, and are continuing to violate, that Act by not submitting the Plan Amendments to Congress for review.  This claim should be dismissed for lack of subject matter jurisdiction because the CRA expressly bars judicial review of agency "omissions" that allegedly violate the Act.[2]

**I.      Section 805 of the CRA Bars Judicial Review of Allegations that an Agency Improperly Failed to Submit a Rule to Congress**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute[.]"  *Kokkonen v. Guardian Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).  "'Congress may withhold from any court of its creation jurisdiction over any of the enumerated controversies.'"  *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (en banc) (quoting *Sheldon v. Sill*, 49 U.S. 441, 449 (1850)).  Further, jurisdiction over the United States is presumed not to exist, and waivers of the United States' sovereign immunity are strictly construed in favor of the sovereign.  *Lane v. Pena,* 518 U.S. 187, 192 (1996).

---

[2]  In light of the CRA's clear prohibition on judicial review, the Court need not address Plaintiff's assertion that land use plan amendments constitute "rules" under the CRA.  *See, e.g., Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225 (D.C. Cir. 2009) ("The language of § 805 is unequivocal and precluded review of this claim—even assuming that the plan amendments qualify as rules subject to the Act in the first place.").

Plaintiffs here seek review under the APA's wavier of sovereign immunity.  *See* Compl. ¶¶ 6, 59.  Although the APA "confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702," it also "withdraws that cause of action to the extent that the relevant statute 'preclude[s] judicial review,' 5 U.S.C. § 701(a)(1)."  *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984); *see also Tucson Airport Auth. v. Gen. Dynamics Corp.,* 136 F.3d 641, 645 (9th Cir. 1998).

Here, the "relevant statute"—the CRA—unambiguously "preclude[s] judicial review" of Plaintiff's claim.  5 U.S.C. § 701(a).  Specifically, the CRA provides that "[n]o determination, finding, action, or *omission* under this chapter shall be subject to judicial review."  *Id.* § 805 (emphasis added).  By its plain terms, this broad preclusion of judicial review bars consideration of Plaintiff's claim that the Forest Service and BLM violated the CRA by omitting to submit the Sage Grouse Plan Amendments to Congress.

      **A.**      **The Plain Language of § 805 and its Context within the APA Demonstrate that It Unambiguously Precludes Judicial Review of Allegations that an Agency has Violated the CRA by Failing to Submit a Proposed Rule to Congress**

When interpreting a statute, a court's first step is to "determine whether the language at issue has a plain and unambiguous meaning . . . ."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  Where the statutory language is unambiguous, the court's inquiry is at an end.  *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018) (opining that when the plain language is "unambiguous," "our inquiry begins with the statutory text, and ends there as well" (internal quotation marks and citation omitted)).  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Robinson*, 519 U.S. at 341 (citations

omitted). Here, the language of § 805, its context in the APA and the broader context of the CRA make clear that the statute unambiguously precludes judicial review of claims that an agency violated the CRA by failing to submit a proposed rule to Congress.

First, the language of § 805 is clear, broadly providing that "[n]o . . . omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. There is no basis in this language to limit the preclusion of judicial review to omissions *by Congress*. As noted in one of the very first interpretations of § 805, "the statute provides for no judicial review of any 'determination, finding, action, or omission *under this chapter*,' not '*by Congress under this chapter*.' The Court must follow the plain English." *Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, No. A 97 CA 421 SS, 1998 WL 842181, at *7 n.15 (W.D. Tex. June 25, 1998) (emphasis in original), *aff'd*, 201 F.3d 551 (5th Cir. 2000). Therefore, the Agencies' alleged "unlawful failure to submit the Sage Grouse Rules" to Congress under the CRA, Compl. ¶ 49, is an "omission" under the CRA within the meaning of § 805.

This plain language reading is confirmed by the context of the APA. As noted above, the CRA added a new chapter to the APA, and the limits on judicial review imposed by that statute provide context for understanding § 805. The APA, through its definition of "agency," provides that the actions or omissions of Congress are not subject to judicial review. *See* 5 U.S.C. § 551 ("For the purpose of this subchapter—(1) 'agency' means each authority of the Government of the United States, whether or not is within or subject to review by another agency, but does not include—(A) the Congress . . . ."). The CRA explicitly carries forward this exclusion of congressional actions or omission. *See id.* § 804 ("For purposes of this chapter—(1) The term 'Federal agency' means any agency as that term is defined in Section 551(1)."). And, while the APA does not expressly refer to the President, the Supreme Court held—nearly four years prior

6

to passage of the CRA—that actions of the President are not subject to review under the APA. *See Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992); *cf. Merck & Co. v. Reynolds*, 559 U.S. 633, 648 ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."). Thus, even in the absence of § 805, actions or omissions of Congress or the President under the CRA would not be subject to judicial review. Put otherwise, the only reading of § 805 that gives it meaning is one that covers the actions or omissions of rule-issuing *agencies*, because actions or omissions of the other two entities that play a role in the CRA—Congress and the President—are already immune from judicial review under the APA. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 664, 668-69 (2007) (opining that courts must avoid reading statutory language in a way that renders it redundant of existing provisions).

In short, the plain language of § 805 and its context within the APA and the CRA make clear that it unambiguously precludes judicial review of allegations that an agency has violated the CRA by failing to submit a proposed rule to Congress. Where the language of a statute is clear, that is the end of the judicial inquiry. "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992) (internal citations omitted) (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981)).

### B. The Weight of the Case Law Supports the Plain Meaning of § 805

Not surprisingly, given the plain language of the statute, the vast majority of courts to have considered § 805 have concluded that it bars judicial review of allegations of agency non-compliance with the CRA by inaction. Most analogously, in *Montanans for Multiple Use v. Barbouletos*, 542 F. Supp. 2d 9, 20 (D.D.C. 2008), *aff'd*, 568 F.3d 225 (D.C. Cir. 2009), the

plaintiffs alleged—as does the Plaintiff here—that the Forest Service violated the CRA by not submitting land use plan amendments to Congress. The court granted the Forest Service's motion to dismiss, ruling the bar on judicial review in § 805 "unambiguously" precludes judicial review of the Forest Service's compliance with the Act. *Id.* The court of appeals affirmed, concluding that the "language of § 805 is unequivocal and precluded review of this claim." 568 F.3d at 197.

The Tenth Circuit and numerous district courts around the country have reached the same conclusion. *See Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007) ("The Congressional Review Act specifically precludes judicial review of an agency's compliance with its terms." (citing 5 U.S.C. § 805)); *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, -- F.3d --, No. 17-5110, 2018 WL 2749228, at *9 (D.C. Cir. June 8, 2018) (dismissing allegation that Department of Homeland Security violated CRA, noting the CRA "denies courts the power to void rules on the basis of agency noncompliance with the [CRA]") (quoting *Montanans for Multiple Use*, 568 F.3d at 229); *United States v. Carlson*, No. 12-305, 2013 WL 5125434, at *14 (D. Minn. Sept. 12, 2013) (holding that § 805 bars consideration of the claim that the Drug Enforcement Administration violated the CRA by not submitting modification of controlled substance list to Congress); *Forsyth Mem'l Hosp. v. Sebelius*, 667 F. Supp. 2d 143, 150 (D.D.C. 2009) (holding that § 805 bars judicial review of claim that Secretary of Health and Human Services should have submitted new policy to Congress), *aff'd*, 639 F.3d 534 (D.C. Cir. 2011); *In re Operation of Mo. River Sys. Lit.*, 363 F. Supp. 2d 1145, 1173 (D. Minn. 2004) (holding that § 805 bars judicial review of Fish and Wildlife's determination under § 804(2) of the CRA that a critical habitat designation was not a major rule), *vacated in part on other grounds*, 421 F.3d 618 (8th Cir. 2005); *United States v. Am. Elec. Power Serv. Corp.*, 218

F. Supp. 2d 931, 949 (S.D. Ohio 2002) (holding that § 805 bars judicial review of claim that EPA action was a rule that should have been submitted to Congress under the CRA); *Texas Savings*, 1998 WL 842181, at *7 (holding that § 805 bars judicial review of claim that agency failed to submit policy to Congress under § 801).

In sum, the "great weight of the case law" holds that the plain language of § 805 bars judicial review of an agency's alleged failure to submit a rule to Congress under the CRA. *Carlson*, 2013 WL 5125434, at *15.

> C. **The Sole Court to Extend Judicial Review to Agency Actions under the CRA Misinterpreted § 805**

Defendants are aware of only one case holding that an agency's failure to submit a rule to Congress under the CRA was judicially reviewable, namely, the unpublished decision in *United States v. Southern Indiana Gas & Electric Co.*, No. IP99–1692–C–M/S, 2002 WL 31427523 (S.D. Ind. Oct. 24, 2002). There the court held that § 805 did not preclude review of a claim that EPA was obligated to submit changes to a rule to Congress under the CRA. The court found the text of § 805 ambiguous and then—looking to the purpose of the statute and the "legislative record"—concluded that § 805 was meant to bar judicial review only of actions of Congress under the CRA and not the actions or omissions of agencies. *Id.* at *6. This reasoning is deeply flawed.

First, the *Southern Indiana Gas* court erred in finding § 805 ambiguous and then seeking to inform its interpretation through post-enactment legislative history. As shown above, nothing in the language of § 805 is ambiguous, and the court's reading of the language to apply only to actions of Congress as opposed to agencies cannot be squared with other provisions of the APA. Because the language of § 805 is unambiguous, the *Southern Indiana Gas* court erred in

9

resorting to the legislative history of the CRA. *See, e.g., Carlson*, 2013 WL 5125434, at *15 (stating it was "not persuaded" by the *Southern Indiana Gas* court's finding that § 805 is ambiguous and emphasizing that it must "follow the plain English"). This Court should decline to repeat that error.

To the extent that the Court looks to the legislative history, that history provides no useful guidance. First, the only legislative history for the CRA is a statement from the bill's sponsors added to the Congressional Record *after* passage of the Act. *See* 142 Cong. Rec. E571 (Extensions of Remarks Apr. 19, 1996) (speech of Rep. Hyde), 142 Cong. Rec. S3683 (daily ed. Apr. 18, 1996) (statement of Sens. Nickles, Reid, and Stevens). The Supreme Court has explicitly disallowed reliance on post-enactment statements:

> Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation. Real (pre-enactment) legislative history is persuasive . . . because it is thought to shed light on what legislators understood an ambiguous text to mean when they voted to enact it into law. But post-enactment legislative history by definition could have had no effect on the congressional vote.

*Bruesewitz v. Wyeth*, 562 U.S. 223 (2011) (internal citations and quotation marks omitted). Indeed, even the court in *Southern Indiana Gas* acknowledged "that the lack of formal legislative history for the CRA makes reliance on this joint statement troublesome." 2002 WL 31427523, at *5 n.3.

Second, the legislative history provides no clear guidance as to the meaning of § 805. With regard to judicial review, the statement in the Congressional Record first asserts that "Section 805 provides that a court may not review any congressional *or administrative* 'determination, finding, action, or omission under this chapter,'" suggesting the actions of administrative agencies are precluded from judicial review. 142 Cong. Rec. at S3686 (emphasis

added).  The statement later provides, however, that when deciding cases "properly before it," the "limitation on judicial review in no way prohibits a court from determining whether a rule is in effect.  For example, the authors expect that a court might recognize that a rule has no legal effect due to the operations of section 801(a)(1)(A) or 801(a)(3)." *Id.*  What this language means is not clear.  It may, as only the court in *Southern Indiana Gas* believed, mean the sponsors intended for courts to be able to review agency failures to submit rules to Congress.  But it is equally plausible from the context—the limitation to cases over which the court has jurisdiction (cases "properly before it") and use of the word "recognize" (rather than "review") with regard to whether a rule is in effect—that the sponsors intended not to confer direct review authority, but rather to ensure that courts adjudicating a challenge to a rule under statutes other than the CRA were not precluded from acknowledging that the rule was not in effect.  In any case, the post-hoc statement of the bill's sponsors is not clear and "cannot amend the clear and unambiguous language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002); *see also Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 634, n.9 (2018) ("Even for those of us who make use of legislative history, ambiguous legislative history cannot trump clear statutory language. Just so here." (internal quotation marks and citation omitted)).

## CONCLUSION

In § 805 of the CRA, Congress has plainly and unambiguously precluded judicial review of allegations that an agency improperly failed to submit a rule to Congress.  Because that is precisely the allegation made by Plaintiff here, § 805 leaves this Court without subject matter jurisdiction and requires that this case be dismissed.

Respectfully submitted this 22nd day of June, 2018,

BART M. DAVIS

United States Attorney

CHRISTINE ENGLAND
Assistant United States Attorney
U.S. Attorney's Office, District of Idaho
800 Park Boulevard, Suite 600
Boise, Id 83712
Tel: (208) 334-1184; Fax: (208) 334-1414
E-mail: christine.england@usdoj.gov

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

BARCLAY T. SAMFORD
LUTHER L. HAJEK
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel:    (303) 844-1376 (Hajek)
        (303) 844-1475 (Samford)
E-mail: luke.hajek@usdoj.gov
        clay.samford@usdoj.gov

Attorneys for Defendants