EDWARD DINDINGER, Idaho Bar No. 10144
Dindinger & Kohler, PLLC
P.O. Box 5555
Boise, Idaho 83705
Telephone: (208) 713-8620
E-mail: edward@dklawboise.com

*JONATHAN WOOD, DC Bar No. 1045015
TODD F. GAZIANO, Tex. Bar No. 07742200
Pacific Legal Foundation
3033 Wilson Blvd., Suite 700
Arlington, Virginia 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747
E-mail: jwood@pacificlegal.org
E-mail: tgaziano@pacificlegal.org

*JEFFREY W. McCOY, Cal. Bar No. 317377
CALEB R. TROTTER, Cal. Bar No. 305195
*KAYCEE M. ROYER, Cal. Bar No. 317397
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
E-mail: jmccoy@pacificlegal.org
E-mail: ctrotter@pacificlegal.org
E-mail: kroyer@pacificlegal.org
*Pro Hac Vice

Attorneys for Plaintiff Tugaw Ranches, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TUGAW RANCHES, LLC,<br><br>                                        Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF INTERIOR; et al.,<br><br>                                        Defendants. | Case No. 4:18-cv-00159-CWD<br><br>**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS [Dkt. 14]** |

## Table of Contents

Table of Authorities ....................................................................................................3

Introduction ...............................................................................................................7

Background .................................................................................................................7

Standard of Review ....................................................................................................9

Argument ...................................................................................................................9

   I.    There is a strong presumption of judicial review
       of agency actions under the APA ....................................................................10

   II.   The CRA does not bar judicial review of agency actions unlawfully withheld ................12

     A.   The Agencies' interpretation would negate the Congressional
         Review Act's purpose and render the statute ineffective ...............................12

     B.   The split of judicial authority shows that the provision relied on
         by the Agencies does not provide "clear and convincing" proof
         that Congress wished to withhold review ....................................................15

     C.   The CRA's sponsors confirmed that judicial review is available
         when agencies violate the rule-submission requirement .................................18

   III.  The Agencies have unreasonably delayed submission of the sage grouse rules ..............22

Conclusion ...............................................................................................................26

Certificate of Service ...............................................................................................27

## Table of Authorities

### Cases

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ............................................................... 9, 11-12, 21

*Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984) .......................................................... 9, 11, 15

*Boise Cascade Corp. v. EPA*, 942 F.2d 1427 (9th Cir. 1991) ..................................................... 14

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ............................................................................ 10

*Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001) ......................................................................... 23

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) ........................................................................... 20

*Bugenig v. Hoopa Valley Tribe*, 266 F.3d 1201 (9th Cir. 2001) .................................................. 21

*Cal. Sea Urchin Comm'n v. Bean*, 828 F.3d 1046 (9th Cir. 2016) .............................................. 25

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ...................................... 11

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980) ............................. 20

*Ctr. for Biological Diversity v. Zinke*, No. 17-cv-00091,
      2018 WL 2144349 (D. Alaska May 9, 2018) ..................................................................... 16, 20

*DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*,
      485 U.S. 568 (1988) ............................................................................................................... 18

*Dunlop v. Bachowski*, 421 U.S. 560 (1975) ............................................................................. 9, 11-12

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ......................................................................... 19

*Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000 (9th Cir. 1998) ........................................ 10

*I.N.S. v. Chadha*, 462 U.S. 919 (1983) .......................................................................................... 8

*In re A Community Voice*, 878 F.3d 779 (9th Cir. 2017) ......................................................... 23-24

*In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) .................................... 23

*King v. Burwell*, 135 S. Ct. 2480 (2015) ............................................................................ 7, 9, 12-13

*Liesegang v. Sec'y of Veterans Affairs*, 312 F.3d 1368 (Fed. Cir. 2002) ..................................... 16

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892 (1990) ........................................................ 23-24

*Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct. 1645 (2015) ........................................................ 11, 13

*McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) ................................................... 10-11

*Mester Mfg. Co. v. I.N.S.*, 879 F.2d 561 (9th Cir. 1989) ............................................... 19

*Moapa Band of Paiute Indians v. U.S. Dep't of Interior*,
    747 F.2d 563 (9th Cir. 1984) ............................................................................................. 11

*Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225 (D.C. Cir. 2009) ............................ 15

*N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982)................................................................. 21

*N.Y. State Dep't of Social Servs. v. Dublino*, 413 U.S. 405 (1973) .............................................. 12

*Natural Res. Def. Council v. Abraham*, 355 F.3d 179 (2d Cir. 2004) .......................................... 16

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004)................................................... 22-23

*Padash v. I.N.S.*, 358 F.3d 1161 (9th Cir. 2004)........................................................................ 14

*Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43 (1993) ......................................................... 9-10

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .......................................................................... 20

*Tex. Savings & Cmty. Bankers Ass'n v. Fed. Housing Fin. Bd.*,
    No. A 97 CA 421 SS, 1998 WL 842181 (W.D. Tex. June 25, 1998).................................... 16

*Traynor v. Turnage*, 485 U.S. 535 (1988) ................................................................................. 10

*United States v. Am. Elec. Power Serv. Corp.*,
    218 F. Supp. 2d 931 (S.D. Ohio 2002) ........................................................................... 15-16

*United States v. Carlson*, No. 12-305,
    2013 WL 5125434 (D. Minn. Sept. 12, 2013) ...................................................................... 15

*United States v. Reece*, 956 F. Supp. 2d 736 (W.D. La. 2013)................................................ 16-18

*United States v. S. Indiana Gas & Elec. Co.*, No. IP99-1692-C-M/S,
    2002 WL 31427523 (S.D. Ind. Oct. 24, 2002) .................................................................. 16-17

*United States v. Woods*, 571 U.S. 31 (2013)............................................................................... 20

*United Steelworkers of Am., AFL-CIO-CLC v. Rubber Mfrs. Ass'n*,
    783 F.2d 1117 (D.C. Cir. 1986) .......................................................................................... 24

*Util. Air Reg. Gp. v. EPA*, 134 S. Ct. 2427 (2014) ................................................................... 12

*Valenzuela Gallardo v. Lynch*, 818 F.3d 808 (9th Cir. 2016) .................................................... 18

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259 (10th Cir. 2007)............................. 15

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) ........................................................................ 9

**Statutes**

5 U.S.C. § 551(4) ........................................................................................................................ 23

5 U.S.C. § 553(b) ........................................................................................................................ 24

5 U.S.C. § 701(a)(1) ...................................................................................................................... 9

5 U.S.C. § 704 ............................................................................................................................. 25

5 U.S.C. § 706(1) ........................................................................................................................ 22

5 U.S.C. § 706(2) ........................................................................................................................ 24

5 U.S.C. § 801 ............................................................................................................................. 24

5 U.S.C. § 801(a)(1)(A) ............................................................................................................ 7-8, 23

5 U.S.C. § 801(a)(3) .................................................................................................................... 19

5 U.S.C. § 801(b) .................................................................................................................. 8, 10, 14

5 U.S.C. § 802(a) ..................................................................................................................... 8, 25

5 U.S.C. § 804 ............................................................................................................................. 23

5 U.S.C. § 805 ......................................................................................................................... 7, 12

5 U.S.C. § 806 ......................................................................................................................... 10, 14

**Rule**

Fed. R. Civ. P. 8(a) ....................................................................................................................... 9

**Other Authorities**

142 Cong. Rec. 6922 (1996) ................................................................................................... 8, 18

142 Cong. Rec. H3005 (Mar. 28, 1996) ........................................................................... 13, 17, 21

142 Cong. Rec. H3016 (Mar. 28, 1996) ............................................................................... 13, 17

142 Cong. Rec. S3683 (Apr. 18, 1996) ................................................................... 7-8, 10, 13, 18-21

Attorney General's Manual on the APA (1947),
    *available at* https://archives.org/details/AttorneyGenerals
    ManualOnTheAdministrativeProcedureActOf1947 ............................................................... 23

Cole, Michael J., *Interpreting the Congressional Review Act:*
   *Why the Courts Should Assert Judicial Review, Narrowly Construe*
   *"Substantially the Same," and Decline to Defer to Agencies Under* Chevron,
   70 Admin. L. Rev. 53 (2018) ................................................................ 14

H. Comm on the Judiciary, Subcomm. on Commercial & Admin.
   Law, 109th Cong., Interim Report on the Administrative Law,
   Process and Procedure Project for the 21st Century (Comm. Print 2006),
   *available at* https://www.gpo.gov/fdsys/pkg/CPRT-109HPRT31505/.../CPRT-
   109HPRT31505.pdf ............................................................................ 21-22

Larkin, Jr., Paul J., *Reawakening the Congressional Review Act*,
   41 Harv. J.L. & Pub. Pol'y 187 (2018) ..................................... 13, 15, 18

## Introduction

In 1996, Congress enacted the Congressional Review Act (CRA) to restore some measure of democratic accountability to the federal bureaucracy. That law compels agencies to submit every rule to Congress for review before it can go into effect. 5 U.S.C. § 801(a)(1)(A). Tugaw Ranches, LLC, which has permits to graze public lands managed by the Bureau of Land Management and United States Forest Service, challenges those agencies' failure to submit to Congress controversial and burdensome rules that restrict grazing and other uses of federal lands within the range of the greater sage grouse—a clear violation of the law. As a result, these agencies are enforcing rules that, under the clear terms of the statute, cannot lawfully be in effect and which Congress may disapprove if the rules were subjected to democratic scrutiny as required by the CRA.

Despite wrongfully withholding the sage grouse rules from Congress, Defendants (collectively the Agencies) move to dismiss Tugaw Ranches' complaint, arguing that no agency's violation of the CRA—no matter how clear-cut—can be reviewed by any court. Although the statute contains a provision that, at first blush, could support the Agencies' argument, 5 U.S.C. § 805, the statute as a whole, canons of statutory construction, legislative history, and the strong presumption of judicial review for agency actions foreclose the Agencies' claim that they can openly violate the statute with impunity. Simply put, if their argument carries the day, it will entirely defeat the operation of the CRA, contrary to Supreme Court precedent. *See King v. Burwell*, 135 S. Ct. 2480, 2492-93 (2015).

## Background

The CRA was enacted to restore the "delicate balance between the appropriate roles of the Congress in enacting laws, and the Executive Branch in implementing those laws." 142 Cong. Rec.

S3683 (Apr. 18, 1996) (joint statement of Sens. Nickles, Reid, and Stevens); 142 Cong. Rec. 6922 (1996) (identical statement submitted on behalf of the House sponsors). The problem Congress aimed to solve with this statute is immensely important: federal agencies issue countless rules of great economic, social, and political significance without anyone considering them who is directly accountable to the American people. *See* Compl. ¶¶ 17-19.

The CRA rectifies this problem by compelling agencies to submit every rule they adopt to Congress before the rule may go into effect. 5 U.S.C. § 801(a)(1)(A). Once a rule is submitted, our elected representatives can review the rule and, if they wish, pass a joint resolution voiding the rule using expedited procedures. 5 U.S.C. § 802(a). If both houses of Congress pass such a resolution, it goes to the President for his signature, after which it becomes law. *See I.N.S. v. Chadha*, 462 U.S. 919 (1983). At that point, the disapproved rule cannot take effect and the agency is barred from issuing any new rule "that is substantially the same" unless "specifically authorized" by Congress. 5 U.S.C. § 801(b).

On September 22, 2015, the Bureau of Land Management and Forest Service issued land use plans for federal lands within the range of the greater sage grouse. Compl. ¶¶ 27-36. These sage grouse rules affect the use of tens of millions of acres, including lands grazed by Tugaw Ranches, and require restrictions on grazing. *Id*. ¶¶ 38-49. Despite the significance and controversy surrounding these rules (or perhaps because of them), the Bureau of Land Management and Forest Service did not submit the sage grouse rules to Congress under the CRA. *See id*. ¶ 37; *see also id*. ¶ 49. And despite withholding these rules from democratic scrutiny, both agencies are treating them as lawfully in effect. *Id*. ¶¶ 38-46 (discussing the agencies' implementation of the rules on the lands grazed by Tugaw Ranches).

## Standard of Review

A complaint is only required to set forth a short and plain statement of the claim to give the defendant fair notice and the grounds upon which the claim rests. Fed. R. Civ. P. 8(a). The court must assume all of the complaint's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A complaint should only be dismissed under Federal Rule of Civil Procedure 12(b)(1) if those allegations and inferences are insufficient to establish subject matter jurisdiction. *Id.*

## Argument

To determine whether an agency action is subject to judicial review, courts begin with a "strong presumption" that review is available and impose on the agency the "heavy burden" of rebutting that presumption. *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975). Congress can preclude judicial review under a particular statute, if the language of the statute clearly and convincingly bars review of the particular agency actions. 5 U.S.C. § 701(a)(1); *see Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) (establishing the clear and convincing standard). If there is substantial doubt about the availability of judicial review, the presumption controls. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984); *see Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 63-64 (1993) (courts should favor any interpretation of a statute that permits judicial review of agency actions).

Congress has not barred judicial review under the CRA. On the contrary, interpreting the CRA to bar judicial review would violate the fundamental canon of statutory construction that statutes must be read as a whole and no provision shall be read to frustrate any other provision or undermine the statute. *King*, 135 S. Ct. at 2492. The agencies' preferred interpretation would completely undermine the operation of the CRA by allowing agencies to withhold rules from

congressional review with no consequence to the agency. That interpretation also cannot be reconciled with the CRA's anti-circumvention provision, which only courts can enforce, or the CRA's severability clause, which shows Congress expected courts to apply the CRA. 5 U.S.C. §§ 801(b), 806. Finally, the CRA's House and Senate sponsors issued a joint statement explaining that "the limitation on judicial review in no way prohibits a court from determining whether a rule is in effect." 142 Cong. Rec. S3686. Instead, Congress "expect[s] that a court might recognize that a rule has no legal effect due to the operation of subsections 801(a)(1)(A) or 801(a)(3)." *Id.* Thus, the CRA need not be interpreted to foreclose judicial review of agency violations of the rule-submission requirement and the motion to dismiss should be denied.

## I. There is a strong presumption of judicial review of agency actions under the APA

The Agencies argue that sovereign immunity precedents require the Court to construe its power to review their actions narrowly. Not so. Although Congress ordinarily guards jealously the United States' sovereign immunity, it has taken the opposite approach with federal agencies. Congress has broadly waived sovereign immunity for suits challenging agency actions under the APA. *See Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988) ("[I]t is undisputed" that the APA "was intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity . . .").

Judicial review under the APA is not construed narrowly but is instead broadly presumed. The Supreme Court and Ninth Circuit recognize a "strong presumption that Congress intends judicial review of administrative action." *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998) (quoting *Traynor v. Turnage*, 485 U.S. 535, 542 (1988)); *see Reno v. Catholic Social Servs., Inc.*, 509 U.S. at 63-64 ("[T]here is a 'well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action[.]'" (quoting *McNary*

*v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991))). Congress has recognized few discrete exceptions to this general rule, which the courts have appropriately construed narrowly. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); *Moapa Band of Paiute Indians v. U.S. Dep't of Interior*, 747 F.2d 563, 565 (9th Cir. 1984) ("Preclusion of judicial review is not lightly inferred, and usually will not be found absent a clear command of the statute.").

The agency opposing judicial review bears "the *heavy burden* of overcoming the *strong presumption*" of judicial review. *Dunlop*, 421 U.S. 567 (emphasis added). To do so, an agency must make a "clear and convincing" showing that Congress wished to withhold review. *See Abbott Labs.*, 387 U.S. 141. To assess whether this standard is satisfied, courts should consider the statute's text, contemporaneous judicial construction, legislative history, and the effect of withholding judicial review on the operation of the statute as a whole. *Block*, 467 U.S. at 349. "[W]here substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Id.* at 351.

This presumption reflects the Supreme Court's concern for the consequences if an agency's "compliance with the law would rest in the [agency's] hands alone." *Mach Mining*, *LLC v. E.E.O.C.*, 135 S. Ct. 1645, 1652 (2015). Although not casting aspersions on agencies' "fidelity to law," the Court "know[s]—and know[s] that Congress knows—that legal lapses and violations occur, and especially so when they have no consequence." *Id*. at 1652-53. Therefore, courts should be extremely hesitant to find judicial review unavailable. *Id*. at 1651. Congress "rarely intends to prevent courts from enforcing its directives to federal agencies" as this would leave the "agency to police its own conduct" with no consequences if the agency fails to do so. *Id*.

The Agencies fail to address this strong presumption of judicial review in their motion to dismiss. Additionally, they have not made the "clear and convincing" showing required to carry their "heavy burden of overcoming the strong presumption" in favor of judicial review. *See Abbott Labs.*, 387 U.S. at 141; *Dunlop*, 421 U.S. at 567.

## II.    The CRA does not bar judicial review of agency actions unlawfully withheld

The Agencies argue that the CRA bars any judicial review of anything related to the statute—including obvious agency violations of the law's clear rule-submission requirement. In making that argument, the Agencies focus myopically on a provision of the law providing that no "determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Although this provision, in isolation, could be read to support the Agencies' argument, other text, canons of statutory interpretation, and legislative history dispel this initial impression. Instead, the statute's full context shows that the determinations, findings, actions, and omissions referenced in § 805 are those of the Office of Management and Budget, Government Accountability Office, Congress, and the President. Nothing supports the assertion that Congress intended this provision, which does not mention agencies, to *de facto* exempt them from complying with the statute.

### A.    The Agencies' interpretation would negate the Congressional Review Act's purpose and render the statute ineffective

Statutory provisions are not read in isolation. Rather, "'the fundamental canon of statutory construction'" is "'that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, 135 S. Ct. at 2492 (quoting *Util. Air Reg. Gp. v. EPA*, 134 S. Ct. 2427, 2441 (2014)). In particular, courts "'cannot interpret federal statutes to negate their own stated purposes.'" *Id.* at 2493 (quoting *N.Y. State Dep't of Social Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973)).

The Agencies' interpretation would negate the CRA's obvious purpose of restoring democratic accountability and oversight to the administrative state. *See* 142 Cong. Rec. S3683. The only consequence to an agency for violating the CRA's rule-submission requirement is a court declaring the agency's rule not in effect. Under the Agencies' interpretation, there would be no reason for an agency to ever comply with the statute because there is no consequence to ignoring the statute's clear command and, thereby, evading democratic scrutiny.[1] *Cf. Mach Mining*, 135 S. Ct. 1652-53 (courts should presume judicial review is available to avoid this precise result). Such a broad free pass for agencies to violate the law "would have been an irrational response to Congress's concern with agency overreaching" when it enacted the CRA. Paul J. Larkin, Jr., *Reawakening the Congressional Review Act*, 41 Harv. J.L. & Pub. Pol'y 187, 222 (2018). Because the Agencies' interpretation would negate the CRA's clear purpose, it must be rejected under *King v. Burwell*. 135 S. Ct. at 2492-93 (interpreting "exchange established by the state" to include a federal-established exchange where a contrary interpretation, limited to state-established exchanges, would defeat the operation of the statute).

The Agencies' interpretation would also impermissibly render several other provisions of the statute unworkable. For instance, the CRA provides that, if Congress and the President enact a

---

[1] The early experience under the Regulatory Flexibility Act—another statute aimed at restraining agency excesses—demonstrates the consequences of the Agencies' interpretation. Assured that their actions would not be reviewed by the courts, agencies flagrantly violated this statute. *See* 142 Cong. Rec. H3016 (Mar. 28, 1996) (statement of Rep. Ewing) ("[B]ecause the agencies know their decision to ignore the [Regulatory Flexibility Act] cannot be challenged . . . they almost always do ignore the act. . . [W]ithout judicial review, the Federal regulators will continue to ignore the RFA."); 142 Cong. Rec. H3005 (Mar. 28, 1996) (statement of Mr. McIntosh) ("Federal agencies often ignored the mandate of the [Regulatory Flexibility Act] . . . [J]udicial review . . . will serve as a needed check on agency behavior and help enforce the mandate of the act."). Agencies' mistaken belief that judicial review is not available under the CRA appears to be causing the same result. *See* Compl. ¶¶ 2, 26 (describing studies showing agencies have wrongfully withheld hundreds of rules from Congress).

resolution disapproving a particular rule, the agency is barred from adopting the same or any "substantially similar" rule. 5 U.S.C. § 801(b). Congress does not itself enforce this provision, as it can disapprove any rule submitted to it regardless of whether it is the same or substantially similar to a prior disapproved rule. Rather, this provision can only operate if courts enforce it against recalcitrant agencies. *See* Michael J. Cole, *Interpreting the Congressional Review Act: Why the Courts Should Assert Judicial Review, Narrowly Construe "Substantially the Same," and Decline to Defer to Agencies Under* Chevron, 70 Admin. L. Rev. 53, 68 (2018). Barring any judicial review whatsoever "would render [the anti-circumvention provision] meaningless." *Id.*

Under the Agencies' interpretation, for instance, if Congress and the President disapproved a particular rule, the agency could reissue the exact same rule and, by refusing to send it to Congress, avoid any consequences. Alarmingly, no court could consider such obvious lawlessness even when the agency enforced the rule against private parties. Permitting this result would frustrate the anti-circumvention provision, contrary to the fundamental canon of statutory interpretation that no provision of a statute should be read to render any other ineffective or redundant. *See Padash v. I.N.S.*, 358 F.3d 1161, 1170 (9th Cir. 2004) (courts should "presume[ ] congressional intent to create a coherent regulatory scheme"); *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

Other text of the CRA similarly suggests that § 805 cannot be interpreted so broadly. The provision immediately following § 805 provides that if any provision of the law is held invalid the rest of the statute should be severed. 5 U.S.C. § 806. This provision is inconsistent with the

Agencies' interpretation, as the severability clause could only be implicated if courts can apply the CRA. *See* Larkin, *Reawakening the Congressional Review Act*, *supra* at 229.

Viewing the statute as a whole and considering canons of statutory construction reveals that the statute does not clearly bar all judicial review. Therefore, the presumption of judicial review controls and the Agencies' argument must be rejected. *See Block*, 467 U.S. at 349.

**B.    The split of judicial authority shows that the provision relied on by the Agencies does not provide "clear and convincing" proof that Congress wished to withhold review**

Although some courts have adopted the Agencies' interpretation of 5 U.S.C. § 805, still others have rejected it. This split shows that "substantial doubt about the congressional intent exists" and, thus, "the general presumption favoring judicial review of administrative action is controlling." *See Block*, 467 U.S. at 351. Additionally, the courts finding in favor of judicial review better reconcile § 805 with the statute as a whole, faithfully apply canons of statutory construction and the presumption of judicial review, and present a more persuasive interpretation.

The Agencies rely greatly on the D.C. Circuit's decision in *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225 (D.C. Cir. 2009).[2] In a mere three sentences, the D.C. Circuit adopted their interpretation without analyzing any of the problems raised above. *See id*. at 229. Three district courts outside the D.C. Circuit have issued similar holdings, also without addressing the consequences for the CRA's purpose and other provisions. *See United States v. Carlson*, No. 12-305, 2013 WL 5125434, at *14 (D. Minn. Sept. 12, 2013); *United States v. Am. Elec. Power Serv.*

---

[2] The Agencies also claim that the Tenth Circuit has held that there can be no judicial review of agencies' violations of the CRA. *See Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007). But the relied upon sentence is clearly dicta. No CRA claim was presented in that case. Instead, the Tenth Circuit made a passing reference to the law in a footnote suggesting the plaintiff's brief contained a typo mistakenly citing the CRA instead of another statute. *See id*.

*Corp.*, 218 F. Supp. 2d 931, 949 (S.D. Ohio 2002); *Tex. Savings & Cmty. Bankers Ass'n v. Fed. Housing Fin. Bd.*, No. A 97 CA 421 SS, 1998 WL 842181, at *7 (W.D. Tex. June 25, 1998). These out of circuit precedents do not fully analyze the issue and are, therefore, unconvincing.

The Agencies mistakenly assert that only one district court has reached a contrary decision. Not so. Two courts of appeal have reviewed claims under the CRA and three additional district courts have held that judicial review is available. *See Natural Res. Def. Council v. Abraham*, 355 F.3d 179, 201-02 (2d Cir. 2004) (reviewing a rule's effective date under the CRA); *Liesegang v. Sec'y of Veterans Affairs*, 312 F.3d 1368, 1373-76 (Fed. Cir. 2002) (same); *Ctr. for Biological Diversity v. Zinke*, No. 17-cv-00091, 2018 WL 2144349, at *10 n.89 (D. Alaska May 9, 2018) (holding judicial review is available for Interior's alleged violation of the CRA); *United States v. Reece*, 956 F. Supp. 2d 736, 743-44 (W.D. La. 2013) (an agency's failure to submit a rule to Congress under the CRA can be raised as a defense to enforcement action); *United States v. S. Indiana Gas & Elec. Co.*, No. IP99-1692-C-M/S, 2002 WL 31427523, at **4-6 (S.D. Ind. Oct. 24, 2002) (an agency's failure to submit a rule can be raised under the APA).

The most extensive discussion of the interaction of § 805, the CRA as a whole, and canons of statutory interpretation is in *S. Indiana Gas & Electric Co.* 2002 WL 31427523, at **4-6. Acknowledging 5 U.S.C. § 805's apparently broad language, the Southern District of Indiana concluded that it is not clear about whose "determination, finding, action, or omission" was exempt from judicial review. *Id*. at *5. Interpreting this to include agencies' violations of the statute's rule-submission requirement would allow agencies to "evade the strictures of the CRA by simply not reporting new rules" and "would be at odds with the purpose of the CRA, which was to provide a check on administrative agencies' power to set policies and essentially legislate without Congressional oversight." *Id*. Therefore, reading the statute to preclude this review "would render

the statute ineffectual" because, as discussed above, several CRA provisions could only be implicated in a judicial challenge to agency noncompliance. *Id.*

To avoid this impermissible result, the court construed the provision's reference to "determination, finding, action, or omission under this chapter" to mean the determinations, finding, and other actions referenced in the preceding sections performed by the Office of Management and Budget, Congress, and the President. *See id.* at **5-6. This reading of the statute aligns with contemporaneous statements from the congressional sponsors of the law. *Id.* at *5; *see infra* Part II(C).

The court also noted that the Agencies' interpretation is inconsistent with Congress' decision to amend the Regulatory Flexibility Act to expand judicial review in the same bill. 2002 WL 31427523, at *6. Prior to 1996, the Regulatory Flexibility Act barred review of "any determination *by an agency* concerning the applicability of any of the provisions of this chapter . . ." *Id.* (emphasis added). During Congress' consideration of the CRA, several congressmen acknowledged that this explicit agency exemption from judicial review had emboldened agencies to ignore statutory requirements, with no consequences to the agencies. *See* 142 Cong. Rec. H3016 (statement of Rep. Ewing); 142 Cong. Rec. H3005 (statement of Mr. McIntosh, the principal sponsor of the CRA in the House). The CRA, by comparison, does not refer to agencies in § 805. In light of the experience under the Regulatory Flexibility Act, it is highly doubtful that Congress would have barred judicial review to allow agencies to similarly flout the CRA and even less likely that it would have done so without commenting on the obvious inconsistency. *See S. Indiana Gas & Electric Co.*, 2002 WL 31427523, at *6.

The Western District of Louisiana's decision in *Reece* highlights another reason why § 805 cannot bear the Agencies' interpretation. 956 F. Supp. 2d at 743-44. If judicial review of agency

violations of the CRA is never available, criminal defendants would be barred from raising the issue to avoid conviction. *See id*. This presents a significant constitutional concern because the Due Process Clause forbids the government from depriving anyone of life, liberty, or property except under law. *See* Larkin, *Reawakening the Congressional Review Act*, *supra* at 227. A rule that is not lawfully in effect due to the CRA does not satisfy this requirement. *See id*. Because the Agencies' interpretation would raise a significant constitutional concern, it should be rejected in favor of an interpretation that would avoid this concern. *See Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 817 (9th Cir. 2016) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." (quoting *DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988))).

### C.   The CRA's sponsors confirmed that judicial review is available when agencies violate the rule-submission requirement

The Court need not resort to legislative history to reject the Agencies' interpretation; the presumption of judicial review, canons of statutory interpretation, and the statute as a whole provide sufficient basis to do so. But Congress' own discussion of the statute removes any lingering doubt about the availability of judicial review when agencies ignore the CRA's rule-submission requirement. The statute's sponsors from both political parties entered an identical joint statement in the Congressional Record for both the House and Senate explaining their shared understanding of the statute. 142 Cong. Rec. S3683; 142 Cong. Rec. 6922-6926. This bipartisan, bicameral statement confirms that the CRA does not bar judicial review of agency's failure to submit rules to Congress as required.

Under Section 805, "the major rule determinations made by the Administrator of the Office of Information and Regulatory Affairs of the Office of Management and Budget are not subject to

judicial review." 142 Cong. Rec. S3686. "Nor may a court review whether Congress complied with the congressional review procedures in this chapter." *Id.* "[H]owever," Section 805 "does not bar a court from giving effect to a resolution of disapproval that was enacted into law" by reviewing whether a future rule conforms to the CRA's ban on substantially similar rules. *Id.* Most relevant here, "[t]he limitation on judicial review in no way prohibits a court from determining whether a rule is in effect." *Id.* Instead, Congress "expect[s] that a court might recognize that a rule has no legal effect due to the operation of subsections 801(a)(1)(A) or 801(a)(3)." *Id.*

Contrary to the Agencies' argument, this statement clearly indicates that the law's sponsors expected courts to decide cases like this one. Subsection 801(a)(1)(A) is the subsection commanding that agencies "shall submit" to Congress every rule they adopt before it takes effect. The only way that a rule could not be in effect "due to the operation of" this subsection is if a court were to enforce the submission requirement.

Next, the Agencies argue that Congress' interpretation should not be credited because it would render the judicial review provision redundant. Courts generally cannot review congressional action or inaction on proposed legislation or Congress' interpretation of its own internal rules.[3] However, Congress' interpretation does not render § 805 redundant for several reasons. First, that interpretation also insulates from judicial review the Office of Management and Budget's "major rules" determinations. *See* 142 Cong. Rec. S3686; *see also* 5 U.S.C. § 801(a)(3) (delaying the effective date for any rule deemed a major rule). Second, it prevents a challenge to Congress' action from being recast as a challenge to an agency's compliance with a resolution of

---

[3] *See Mester Mfg. Co. v. I.N.S.*, 879 F.2d 561, 571 (9th Cir. 1989) (absent constitutional infirmity, courts should defer to Congress' interpretation of its internal rules); *cf. Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992) (suggesting that the Administrative Procedure Act does not apply to Congress).

disapproval. *Cf. Ctr. for Biological Diversity*, 2018 WL 2144349, at *10 n.89 (trying to draw a line between permissible and impermissible challenges). Third, even if this interpretation results in some redundancy, it's an understandable redundancy that the joint statement acknowledges and explains. The joint statement observes that the Constitution's separation of powers generally prevents courts reviewing Congress' actions or inactions. But reaffirming this principle in the statute's text was wise because "Congress may have been reluctant to pass congressional review legislation at all if its action or inaction pursuant to this chapter would be treated differently than its action or inaction regarding any other bill or resolution." 142 Cong. Rec. S3685.

Finally, the Agencies argue that this clear explanation of Congress' intention should be ignored because it slightly postdates the CRA's enactment—by a mere 20 days—and is therefore "post-enactment legislative history." In making that argument, the Agencies greatly exaggerate the effect of *Bruesewitz v. Wyeth LLC*'s recognition that post-enactment congressional statements are not formal legislative history. 562 U.S. 223, 241-42 (2011).[4] Contrary to the Agencies' intimations, the Supreme Court continues to recognize that courts should consider contemporaneous and persuasive statements of Congress' understanding of a statute, even if they postdate enactment. *See United States v. Woods*, 571 U.S. 31, 47-48 (2013) (although not formal legislative history, a post-enactment statement from Congress should be considered "to the extent it is persuasive"); *cf. Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (giving weight to an agency's reasonable interpretation of a statute to the extent it has the "power to persuade").

---

[4] Reliance on post-enactment congressional statements can be treacherous for several reasons. *See, e.g.*, *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n.13 (1980) (post enactment legislative history may be unreliable because memories fade). But none of those concerns arise here.

Both traditional legislative history and subsequent congressional statements support the reliability and persuasiveness of the joint statement. During Congress' consideration of the CRA, one of the sponsors explained that enacting the final version of the statute as an amendment to an existing bill would preclude "a conference report or managers' statement prior to passage[.]" 142 Cong. Rec. H3005 (statement of Mr. McIntosh). But, he explained, the sponsors of the bill intended to draft a statement "that we can insert in the Congressional Record at a later time to serve as the equivalent of a floor managers' statement[.]" *Id.* Thus, when Congress voted, it did so in anticipation that the sponsors would submit the joint statement confirming their shared, contemporaneous understanding of the bill. When Congress voted in anticipation of the issuance of this joint statement, it had no reason to suspect courts would not consider it. *See Bugenig v. Hoopa Valley Tribe*, 266 F.3d 1201, 1217 (9th Cir. 2001) ("'[W]e would be remiss if we ignored these [post-enactment] authoritative expressions concerning the scope and purpose' of the statute." (quoting *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982))); *cf. Abbott Labs.*, 387 U.S. at 141 (courts should consider contemporaneous judicial precedent when analyzing the availability of judicial review under a statute).

The joint statement also reflects this understanding. It explains that the bill "was the product of negotiation with the Senate and did not go through the committee process." 142 Cong. Rec. S3683 (statement of Mr. Nickles). Consequently, "no other expression of its legislative history exists" other than a few short statements during the debates. *Id.* To cure this deficiency, the sponsors "intended" their joint statement "to provide guidance to the agencies, the courts, and other interested parties when interpreting the act's terms." *Id.*

On the CRA's tenth anniversary, the House Judiciary Committee considered this question and came to the same conclusion. *See* H. Comm on the Judiciary, Subcomm. on Commercial &

21

Admin. Law, 109th Cong., Interim Report on the Administrative Law, Process and Procedure Project for the 21st Century 86 n.253 (Comm. Print 2006).[5] The Committee's report acknowledged that the joint statement slightly postdated the law's enactment. *Id*. But, "[i]n the absence of committee hearings and the sparse commentary during floor debate, these explanations represent the most authoritative contemporary understanding of the provisions of the law." *Id.* Although courts are reluctant to put too much weight in post enactment legislative history, the Committee concluded that the joint statement "arguably merits close consideration by a reviewing court as a contemporaneous, detailed, in-depth statement of purpose and intent by the principal sponsors of the law." *Id*.

In summation, Congress' interpretation of the CRA reflected in the sponsors' bipartisan, bicameral joint statement is more persuasive than the Agencies' interpretation. It accords better with the strong presumption of judicial review of agency actions under the APA. And it ensures the effective operation of the CRA. The Agencies' interpretation, on the contrary, would utterly defeat the statute by allowing agencies to violate it with impunity.

### III.    The Agencies have unreasonably delayed submission of the sage grouse rules

Because the Agencies have not met their heavy burden to show the CRA bars judicial review, it must be presumed available under the APA so long as the submission of a rule under the CRA is agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1) (reviewing courts shall "compel agency action unlawfully withheld or unreasonably delayed"). The latter type of case is limited to an agency's failure to take "a *discrete* agency action that it is *required to take*." *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). In other words, the APA

---

[5] *Available    at*    https://www.gpo.gov/fdsys/pkg/CPRT-109HPRT31505/.../CPRT-109HPRT31505.pdf.

"empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'" *Id.* (quoting Attorney General's Manual on the APA 108 (1947));[6] *see, e.g.*, *In re A Community Voice*, 878 F.3d 779, 784-85 (9th Cir. 2017) (agency failure to respond to rulemaking petition is subject to judicial review); *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418-19 (D.C. Cir. 2004) (same). This "protect[s] agencies from undue judicial interference with their lawful discretion, and [avoids] judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *S. Utah Wilderness Alliance*, 542 U.S. at 66.

The CRA's dictate that agencies submit every rule they adopt to Congress is a discrete, mandatory action that courts can enforce. The CRA commands that federal agencies "shall submit" every rule they adopt for review. 5 U.S.C. § 801(a)(1)(A). "Shall" is the clearest way for Congress to signal a nondiscretionary command. *Brower v. Evans*, 257 F.3d 1058, 1067 n.10 (9th Cir. 2001) ("'Shall' means shall."). Thus, this is a discrete, nondiscretionary agency action that can be ordered if an agency unlawfully withholds or unreasonably delays a rule's submission to Congress.

The sage grouse rules are clearly "rule[s]" under the CRA. The statute defines rule broadly as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . ." 5 U.S.C. § 551(4); 5 U.S.C. § 804 (defining "rule" in reference to 5 U.S.C. § 551(4)). The CRA recognizes three narrow exceptions to this broad definition, none of which are implicated here. 5 U.S.C. § 804.

The sage grouse rules are agency statements of general applicability and future effect that implement or prescribe law or policy. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892 (1990)

---

[6] *Available at* https://archive.org/details/AttorneyGeneralsManualOnTheAdministrativeProcedureActOf1947.

(federal land use decisions affecting "vast expanses of territory" are rules of general applicability and future effect). The sage grouse rules establish standards governing the use of tens of millions of acres of public lands. *See* Compl. ¶¶ 47-49. In fact, the sage grouse rules are notice-and-comment rules and, therefore, easily meet the CRA's definition. *See* 5 U.S.C. § 553(b) (defining "rules" more narrowly for purposes of notice-and-comment procedures); Compl. ¶ 36.

To determine whether a delay is unreasonable, the Ninth Circuit balances the burdens on the agency against the impacts to third parties. *See In re A Community Voice*, 878 F.3d at 783-84. Here, those factors plainly weigh in favor of Tugaw Ranches.

If the Court ordered the Agencies to comply with the CRA, the burdens on them would be minimal. The Agencies need only send a "concise general statement relating to the rule" and the text of the rule to each House of the Congress and the General Accounting Office. 5 U.S.C. § 801. Sending a courier with these documents the few miles between the Agencies' headquarters and the U.S. Capitol would require far less time or expense than, for instance, filing the motion to dismiss this case. This is not the sort of burdensome process that courts have previously relied on to excuse agency delays. *See, e.g.*, *United Steelworkers of Am., ALF-CIO-CLC v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (14-month delay is reasonable where "the agency must, of necessity, deal with a host of complex scientific and technical issues").

Taking this simple step would satisfy the CRA and, unless Congress disapproves the sage grouse rules, would prevent any future challenge under the CRA. The Agencies' failure to comply with this mandatory duty, on the other hand, means that the rules will be a source of continuous litigation because the implementation of the rules will result in additional agency actions that can be challenged on the grounds that the sage grouse rules are not lawfully in effect. 5 U.S.C. § 706(2);

*see Cal. Sea Urchin Comm'n v. Bean*, 828 F.3d 1046, 1049-52 (9th Cir. 2016) (infirmity of 1987 regulation can be raised in any challenge to subsequent agency action relying on it).

The trivial inconvenience to the Agencies of submitting these rules pales in comparison to the consequences for third parties. Agencies refusing to submit rules to Congress undermines democratic accountability and results in them unlawfully enforcing controversial and harmful rules that Congress would disapprove if given an opportunity to review them. In this case, the Agencies' failure to follow the law has resulted in the implementation of burdensome regulations on tens of millions of acres, including lands relied on by Tugaw Ranches. Compl. ¶¶ 38-49. The Forest Service is monitoring lands grazed by Tugaw Ranches under the rule and has announced that "permit modifications will occur as soon as practical[.]" *Id*. ¶¶ 42-45. This harms Tugaw Ranches—and others who rely on federal lands for grazing—in a variety of ways: permit modifications will require them to find replacement pasture at considerable cost; they cannot make investments to improve the range; and long-term business planning is far more costly and difficult. *Id*. ¶¶ 45-46.

Finally, there is no legal remedy other than judicial review under the APA. 5 U.S.C. § 704 (providing judicial review of agency actions where "there is no other adequate remedy in a court"). Only the Agencies can carry out their obligation to submit rules to Congress as required by the CRA. The democratically accountable review provided under that law only commences after the agency takes this step. *See* 5 U.S.C. § 802(a) (providing that a resolution of disapproval can only be introduced "in the period beginning on the date on which the report [from the agency] is received by Congress and ending 60 days thereafter").

## Conclusion

The CRA is unequivocal that every agency must submit every rule they adopt to Congress for review. Whether due to carelessness, indifference, or improper motives, the Agencies have not submitted the controversial sage grouse rules to Congress as required by the CRA. And they continue to resist this obligation, despite how easy it would be to comply. Instead, the Agencies seek to handicap the CRA by blocking any judicial review of any agency violation of the statute. This position is belied by the strong presumption of judicial review for agency actions, which the Agencies do not acknowledge, much less surmount. And their interpretation would impermissibly thwart the CRA's purpose. According to that interpretation, every federal agency is free to ignore the law's requirements and suffer no consequence, no matter the effect on third parties subjected to rules that have not undergone the required democratic scrutiny. This is not a permissible interpretation of the statute and the Agencies' motion to dismiss should be denied.

DATED: July 13, 2018.                    Respectfully submitted,

                                               EDWARD DINDINGER
                                               JONATHAN WOOD
                                               TODD F. GAZIANO
                                               JEFFREY W. McCOY
                                               CALEB R. TROTTER
                                               KAYCEE M. ROYER

                                               s/ Jonathan Wood
                                               JONATHAN WOOD

                                               Attorneys for Plaintiff Tugaw Ranches, LLC

**Certificate of Service**

I HEREBY CERTIFY that on the 13th day of July, 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Edward William Dindinger
edward@dklawboise.com

Luther L. Hajek
luke.hajek@usdoj.gov

s/ Jonathan Wood
JONATHAN WOOD