BART M. DAVIS, IDAHO STATE BAR NO. 2696
United States Attorney
CHRISTINE G. ENGLAND, CALIFORNIA STATE BAR NO. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, ID 83712-7788
Tel:   (208) 334-1211
Email: Christine.England@usdoj.gov

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
BARCLAY T. SAMFORD, NM State Bar No. 12323
LUTHER L. HAJEK
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel:   (303) 844-1376 (Hajek)
       (303) 844-1475 (Samford)
E-mail: luke.hajek@usdoj.gov
        clay.samford@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TUGAW RANCHES, LLC, <br><br> Plaintiff, <br><br> HON. C.L. "BUTCH" OTTER, *et al.* <br><br> Proposed Plaintiffs-Intervenors <br><br> v. <br><br> UNITED STATES DEPARTMENT OF INTERIOR, *et al.,* <br><br> Defendants. | Case No. 4:18-cv-00159-CWD <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF No. 14)** |

## INTRODUCTION

Section 805 of the Congressional Review Act ("CRA") provides that "[n]o determination, finding, action, or *omission* under this Chapter shall be subject to judicial review."  5 U.S.C. § 805 (emphasis added).  This broad language unambiguously bars judicial review of Plaintiff's claim that the Bureau of Land Management ("BLM") and Forest Service violated the CRA by not submitting their 2015 Greater Sage Grouse Land Use Plan Amendments ("Plan Amendments") to Congress for review under the CRA.  To avoid the plain meaning of § 805, Plaintiff asserts that what Congress meant to say is "[n]o determination, finding, action, or omission" *by the Office of Management and Budget, Government Accountability Office, Congress, and the President* "under this Chapter shall be subject to judicial review," *but the actions or omissions of rule-issuing agencies are reviewable*.  *See* Pl.'s Resp. to Mtn. to Dismiss ("Pl. Resp.") at 12, ECF No. 19.  This Court should reject Plaintiff's invitation to re-write the plain text of § 805, and should dismiss Plaintiff's case for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## ARGUMENT

I. **SECTION 805 UNAMBIGOUSLY BARS JUDICIAL REVIEW OF ALLEGATIONS THAT AN AGENCY HAS VIOLATED THE CRA BY FAILING TO SUBMIT A PROPOSED RULE TO CONGRESS**

The text of § 805 unambiguously bars judicial review of claims that agencies violated the CRA by omitting to submit rules to Congress.  Where a statute's plain language is "unambiguous," the Court's "inquiry begins with the statutory text and ends there as well." *Nat'l Ass'n of Mfrs v. Dept. of Def.*, 138 S. Ct. 617, 630 (2018).  In its response, Plaintiff does not contest that the plain reading of the statute that Congress actually enacted precludes review of its claim here.  Instead, Plaintiff resorts to a series of policy arguments and a re-writing of the

1

statute to make its case. Plaintiff's attempt to re-write § 805 in this fashion rests on: (1) the unwarranted assumption that the CRA is ineffective without judicial review; (2) a flawed assertion that the plain reading of § 805 is inconsistent with the surrounding terms of the Administrative Procedure Act ("APA") and the CRA; (3) improper reliance on post-enactment legislative statements; and (4) a contrived split in the caselaw. None of Plaintiff's contentions warrant departure from the plain meaning of § 805.[1]

### A. The Plain Reading of § 805 Does Not Negate the CRA's Purpose

Plaintiff asserts that without judicial review, the CRA would be ineffectual because "there would be no reason for an agency to ever comply . . . because there is no consequence to ignoring the statute[]." Pl. Resp. at 13. The CRA, as Plaintiff acknowledges, was enacted by Congress to address the "delicate balance" between the *legislative* and *executive* branches, Pl. Resp. at 7, while simultaneously expressly precluding judicial review. Thus, there is no basis for assuming that Congress believed that judicial review was necessary to police the balance it

---

[1] Plaintiff emphasizes that agency actions are generally presumed to be judicially reviewable. Pl. Resp. at 10-12. Of course, Defendants do not argue that the CRA prohibits a party from challenging agency rules on other available grounds, and the availability of such lawsuits undercuts Plaintiff's arguments that a plain reading of § 805 allows agencies to enforce rules without oversight or consequence. *Id.* at 12-13. However, this same presumption of judicial review has less significance in the context of the CRA, where the statutory directives solely concern the relationship between Congress and the Executive Branch, in contrast to the more common situation in the cases cited by Plaintiff, where the statutory directive to the agency addresses the rights and interests of third parties. *See, e.g., Mach Mining, LLC. v. EEOC*, 135 S. Ct. 1645 (2015) (holding court could review employer's claim that EEOC did not fulfill its obligation to attempt conciliation with employer). Regardless, the presumption is "just that—a presumption." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984). It may be overcome by "specific language" or "by inferences of intent drawn from the statutory scheme as a whole." *Id.* (internal citations omitted). Here the plain language of § 805 and its place in the statutory scheme provide "clear and convincing" evidence of Congress's intent to preclude judicial review of agency omissions to send a rule to Congress. *See* Pl. Resp. at 11 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)).

struck with the CRA. Indeed, Congress has ample means of effectuating the Act and supervising administrative agencies without judicial assistance.

First, congressional review under the CRA can occur without the need for judicial policing of agency submissions because members of Congress can, and do, introduce resolutions of disapproval under the CRA where a rule was not submitted to Congress by the responsible agency. *See* Maeve P. Carey, et al., CONG. RESEARCH SERV., R43992, THE CONGRESSIONAL REVIEW ACT: FREQUENTLY ASKED QUESTIONS (2016), at 11-12 (noting occasions where members of Congress have subjected rules not submitted by agencies to CRA disapproval procedures). More generally, Congress has ample means of supervising federal agencies without the assistance of the judicial branch, including the power to control agency budgets, hold hearings to question agency officials, and pass legislation to override agency rules. *See, e.g., Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (finding that while judicial review was unavailable, "we hardly need to note that an agency's decision to ignore congressional expectations may expose it to grave political consequences"); Jack M. Beermann, *Congressional Administration* 43 SAN DIEGO L. REV. 61 (2006) (discussing Congress's extensive formal and informal means of control over executive agencies); Alyssa Dolan, CONG. RESEARCH SERV., RL30240, CONGRESSIONAL OVERSIGHT MANUAL (2014) (discussing Congressional authority to oversee federal agencies). There is thus no basis for assuming—contrary to the plain language of § 805—that judicial review is needed to effectuate the purposes of the CRA.

Nor is Plaintiff's assumption that agencies will not abide by the law in the absence of judicial review justified. To the contrary, between 1996 and 2012, agencies submitted more the 60,000 rules to Congress under the CRA, notwithstanding the fact that courts have almost unanimously declined to allow judicial review of failures to submit rules. Larkin, Paul J.,

3

*Reawakening the Congressional Review Act*, 41 HARV. J.L. & PUB. POL'Y 187, 233 n. 156 (2018).

In short, the plain language of the CRA says what it means and the Court should not rewrite § 805 to give the CRA what Plaintiff views is needed to give it greater effect. *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1725 (2017) (courts will not presume that any result consistent with a statute's overarching goal must be the law "but will presume more modestly instead that the legislature says what it means and means what it says" (quotation omitted)).

### B. The Plain Reading of § 805 is Supported by the Surrounding Statutory Context

Plaintiff asserts that its re-writing of § 805 is supported by other provisions of the APA, the CRA, and by contemporaneous amendments to the Regulatory Flexibility Act. Pl. Resp. at 12-14, 17. These arguments also miss the mark.

Reading § 805 as allowing review of the omissions of rule-issuing agencies but barring review of acts of the Office of Management and Budget ("OMB"), Government Accountability Office ("GAO"), Congress, and the President renders § 805 largely superfluous in the context of the existing APA limits on judicial review. *Nat'l Ass'n of Homebuilders v. Defs. of Wildlife*, 551 U.S. 644, 668-69 (2007) (noting courts should avoid reading statutory language in a way that renders it redundant of existing provisions). As noted in our opening brief, and not contested by Plaintiff, actions or omissions by Congress and the President are already excluded from judicial review under the APA. *See* Mem. in Supp. of Mtn. to Dismiss ("Def. Br."), at 5-7, ECF No. 14-1. Acts of the GAO are also precluded from judicial review under the APA even absent § 805 because the GAO is part of the legislative branch and thus falls within the APA exemption for "the Congress." *See*, *e.g.*, *Chen v. Gen. Accounting Office,* 821 F.2d 732 (1987); *Pond*

*Constructors, Inc. v. GAO,* No. CV 17-0881 (DLF), 2018 WL 3528309, *1 (D.D.C. May 30, 2018); *College Sports Council v. GAO,* 421 F. Supp. 2d 59, 66 (D.D.C. 2008). And, while the OMB is a federal agency under the APA, its role in implementing the CRA is exceedingly minor. *See* § 804(2) (providing role for OMB in defining "major rules"). Pl. Resp. at 12. It would be odd indeed for Congress to have drafted the broad language of § 805—"[n]o determination, finding, action, or omission under this Chapter shall be subject to judicial review"—if it intended it to apply only to three entities already excluded from judicial review under the APA and a fourth entity with only a ministerial role in the CRA process. The only reading of § 805 that gives it real meaning in the context of the surrounding APA provisions is one that includes the acts or omissions of rule-issuing agencies.

Nor does the plain reading of § 805 render other provisions of the CRA "unworkable." Pl. Resp. at 13-14. Plaintiff first asserts that § 801(b), which bars an agency from issuing "a new rule that is substantially the same" as a rule that was disapproved by Congress, "can only operate if courts enforce it." Pl. Resp. at 14. But this assertion rests on the impermissible assumption that agencies will not follow the law[2] and on the flawed assumption that Congress is powerless to hold agencies to account if they do attempt to skirt their CRA obligation. As noted above, Congress has numerous options for policing agency compliance without judicial review. Plaintiff's contention that the severability clause, § 806, compels departure from the plain meaning of § 805 is equally unpersuasive. Like any statutory severability clause, § 806 demonstrates only Congress's intent that judicial invalidation of any portion of the CRA itself

---

[2] "Agency employees are presumed to discharge their official duties properly and fairly, in good faith and in accordance with law." *PCL Const. Serv. Inc. v. United States,* 47 Fed. Cl. 745 (2000). Tellingly, Plaintiff fails to point to a single instance where an agency appears to have attempted to skirt § 801(b) after disapproval of a rule under the CRA.

5

should not invalidate the Act as a whole. *See generally Alaska Airlines v. Brock*, 480 U.S. 678 (1987) (addressing when a court should sever unobjectionable provisions of law from unconstitutional provision). The severability clause thus suggests only that the CRA *itself* is subject to judicial review, as are all statutes, not that agency actions or omissions *under* the Act are subject to judicial review.[3]

Finally, Plaintiff notes that the "Contract with America Advancement Act of 1996," Pub. L. No. 104-121, 110 Stat. 847 (Mar. 1996), which included the CRA (*see* 110 Stat. at 868), also amended the Regulatory Flexibility Act ("RFA") to allow limited judicial review of agency actions under that act (*see* 110 Stat. at 865).[4] Pl. Resp. at 13 n.1, 17. Plaintiff asserts that Congress's explicit provision for judicial review of agency actions under the RFA indicates Congress also intended to allow review of agency actions under the CRA. *Id.* at 17. But the implication of Congress's inclusion of two disparate provisions in the same law is precisely the opposite. The fact that Congress chose to explicitly and broadly bar judicial review under one subtitle and to explicitly and narrowly allow it under another subtitle demonstrates that Congress consciously adopted the broad language in § 805. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

---

[3] S*ee, e.g., Ctr. for Biological Diversity v. Zinke*, 313 F. Supp. 3d 976 (D. Alaska 2018) (finding § 805 did not bar a constitutional challenge to the CRA).

[4] In contrast to the broad prohibition in §805, the RFA judicial review provision states: "For any rule subject to this chapter, a small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review of agency compliance with the requirements of §§ 601, 604, 605(b), 608(b), and 610 in accordance with chapter 7." 5 U.S.C. § 611(a)(1).

In sum, the surrounding provisions of the APA and the CRA, and the contemporaneous amendment to the RFA, are all supportive of the plain text interpretation of § 805.

### C. The Legislative History Does Not Support Departing from the Plain Language of § 805

Plaintiff asserts that departure from a plain text reading of § 805 is justified by a joint statement in the Congressional Record. Pl. Resp. 18-19. Resorting to the joint statement, however, is inappropriate because the plain language of § 805 is clear, the joint statement post-dates the passage of the Act, and the meaning of the joint statement is not clear.

First, because the plain language of § 805 is clear, the Court should not consider legislative history. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989); *see also Barnhart v. Sigmon Cola Co.*, 534 U.S. 438, 457 (2002) (Legislative history "cannot amend the clear and unambiguous language of a statute."); *id.* (finding "no reason to give greater weight to the views" of individual senators "than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text").

Second, even were the Court inclined to consider legislative history generally, a post-enactment statement like the one relied on by Plaintiff "is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth,* 562 U.S. 223, 242 (2011).[5] The fact that the joint statement proffered by Plaintiff was issued only "slightly" after the CRA passed, or that the sponsors of the bill announced prior to the CRA's passage their intent to later draft a statement

---

[5] Plaintiff cites *Bugenig v. Hoop Valley Tribe*, 266 F.3d 1201, 1217 (9th Cir. 2001), for the proposition that the Court would be "remiss" in not considering the post-enactment statements. Pl. Resp. at 21. In *Bugenig,* however, the Ninth Circuit was not considering post-enactment statements made by individual lawmakers, it was considering the intent behind a congressional amendment to the statute at issue. *See Consumer Production Safety Comm'n v. GTE Sylvania, INc.*, 447 U.S. 102, 117 n.13 (1980) ("[s]ubsequent *legislation* declaring the intent of an earlier statute is entitled to great weight" (emphasis added)).

7

for inclusion in the Congressional Record, does not remedy the shortcomings of the statement as a basis for judicial review. Pl. Resp. at 20-21. The central defect in a post-enactment legislative statement is not the length of time between the statute and the statement, but the fact that "because it was written after passage of the legislation [the statement] did not inform the decisions of the members of Congress who voted in favor of the Act." *Flood v. United States*, 33 F.3d 1174, 1178 (9th Cir. 2004); *see Slaven v. BP Am.*, 973 F.2d 1468, 1475 (9th Cir. 1992) (noting after-the-fact legislative observations are of minimal help in interpreting statutes).[6]

      Finally, even were the Court to consider the joint statement, it does little to illuminate the meaning of § 805. As noted in our opening brief, the joint statement is less than clear about the intent of Congress, and can be read both to suggest the drafters contemplated direct review of agency omissions (as Plaintiff urges) or to suggest the drafters intended only to make clear that courts adjudicating a challenge to a rule under statutes other than the CRA are not barred from acknowledging whether a rule is in effect as a result of the CRA. *See* Def. Br. at 11. At bottom, the ambiguity in the joint statement lessens any weight that the Court should afford to it, if it is considered at all. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. at 634 n.9 (2018) ("[A]mbiguous legislative history cannot trump clear statutory language.").

### D. The Case Law Supports the Plain Meaning of § 805

      Plaintiff labors to develop a "split of judicial authority" over the meaning of § 805. Pl. Resp. at 15. However, except for a single unpublished decision from the Southern District of Indiana, the courts have unanimously found § 805 bars judicial review of an agency's failure to

---

[6] Nor is the joint statement rehabilitated by a subcommittee report—*drafted ten years later*—which asserts that the joint statement "merits close consideration by a reviewing court." *See* Pl. Resp. at 22. A single subcommittee's report does not reflect the intent of a prior Congress, and the choice of how much weight to give legislative history belongs to the courts, not a congressional subcommittee.

submit a rule to Congress. *See* Def. Br. at 7-9. Indeed, in one case, *Montanans for Multiple Use v. Barbouletos*, both the D.C. District Court and the D.C. Circuit held that § 805 precludes review of the precise claim that Plaintiff seeks to bring here—that failure to submit a land use plan amendment to Congress violates the CRA. 542 F. Supp. 2d 9, 20 (D.D.C. 2008), *aff'd,* 568 F.3d 225 (D.C. Cir. 2009). There is no call to depart from the clear weight of the caselaw.

The cases proffered by Plaintiff in its effort to show a split of authority land wide of the mark. *See* Pl. Resp. at 16, 17. In *Natural Resource Defense Council v. Abraham* and *Liesegang v. Secretary of Veterans Affairs*, the courts were not reviewing claims under the CRA, but claims that the agencies violated the rulemaking provisions of separate substantive statutes which the agencies asserted had been amended or affected by the need to comply with the CRA. *Abraham*, 355 F.3d 179, 201-02 (2d Cir. 2004), *Liesegang,* 312 F. 3d 1368, 1374 (Fed. Cir. 2002). In both cases, the courts concluded the CRA did not alter the dates set by the substantive statutes at issue. Neither case interprets § 805 in a manner supportive of Plaintiff's claims because the courts were not considering acts or omissions *under* the CRA. Similarly, in *Center for Biological Diversity v. Zinke*, the court found that § 805 did not bar a constitutional challenge to the CRA itself because such a challenge was not directed toward an act *under* the CRA. The court therefore held that it did not need to address the question of whether § 805 bars judicial review of agency actions under the CRA. 313 F. Supp. 3d 976. Finally, the court in *United States v. Reece* never reached the question of reviewability under § 805 because it had jurisdiction under the Controlled Substances Act. Further, the *Reece* court never reached the merits of the CRA claim because it found the more specific procedures of Controlled Substances Act governed. 956 F. Supp. 2d 736, 745-46 (W.D. La. 2013); *id.* at 736 (noting "further

9

discussion of [compliance with the CRA] is pretermitted by our finding that the DEA complied with the procedural requirements of [the Controlled Substances Act]").

In short, far from a split in the caselaw, Plaintiff's position is supported only by the Southern District of Indiana's unpublished decision in *S. Indiana Gas & Electric Co.*, No. IP99-1692CMS, 2002 WL 31427523 (S.D. Ind. Oct. 24, 2002). Pl. Resp. at 16. But, for the reasons detailed in our opening brief, the *S. Indiana Gas & Electric Co.* decision—which rests on an inexplicable finding that § 805 is ambiguous and the unwarranted assumption that the CRA is rendered ineffectual without judicial review—is deeply flawed. *See* Def. Br. at 9-11. Tellingly, although it was decided more than 15 years ago, the reasoning in the *S. Indiana Gas & Electric Co.* decision has not been adopted by any other court and has been expressly rejected by at least one court. *See, e.g., United States v. Carlson*, 2013 WL 5125434, *15 (D. Minn. Sept. 12, 2013) (observing "[t]he Court is not persuaded," by *United States v. S. Indiana Gas & Electric Co.*) *aff'd*, 810 F.3d 544 (8th Cir. 2016). This Court should reject Plaintiff's laborious effort to fabricate a split in the relevant caselaw.

## CONCLUSION

The plain and unambiguous text of § 805 precludes judicial review of the single claim that Plaintiff seeks to pursue. For that reason, Defendants' Motion to Dismiss should be granted.[7]

Respectfully submitted this 10th day of August, 2018,

BART M. DAVIS
United States Attorney

---

[7] Plaintiff argues that the Plan Amendments are "rules" under the CRA and that the Court should compel their submission to Congress. Pl. Resp. at 22-24. The Court need not address these questions to resolve this motion, which concerns only the prohibition on judicial review under § 805.

10

CHRISTINE ENGLAND
Assistant United States Attorney
U.S. Attorney's Office, District of Idaho
800 Park Boulevard, Suite 600
Boise, Id 83712
Tel: (208) 334-1184; Fax: (208) 334-1414
E-mail: christine.england@usdoj.gov

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

*/s/Barclay T. Samford*
BARCLAY T. SAMFORD
LUTHER L. HAJEK
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel:  (303) 844-1376 (Hajek)
  (303) 844-1475 (Samford)

E-mail: luke.hajek@usdoj.gov
  clay.samford@usdoj.gov

Attorneys for Defendants

11

## CERTIFICATE OF SERVICE

  I hereby certify that on August 10, 2018, I caused the foregoing to be electronically filed with the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Edward W. Dindinger
Edward@dklawboise.Com

Jeffrey McCoy
jmccoy@pacificlegal.org

Jonathan Wood
jw@pacificlegal.org

Kaycee M. Royer
kroyer@pacificlegal.org

Alexandra Shantel Grander
asgrande@hollandhart.com

Samuel Eaton
sam.eaton@gov.idaho.gov

William Gerry Meyers, III
wmyers@hollandhart.com

            */s/ Barclay T. Samford*
            BARCLAY T. SAMFORD
            Trial Attorney