UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TUGAW RANCHES, LLC,<br><br>    Plaintiff,<br><br>    and<br><br>C.L. "BUTCH" OTTER, SCOTT BEDKE, and BRENT HILL,<br><br>    Plaintiffs-Intervenors,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR *et al.*,<br><br>    Defendants. | Case No. 4:18-cv-00159-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction. Dkt. 14. On November 29, 2018, the Court held oral argument and took the motion under advisement. Upon review, and for the reasons set forth below, the Court finds good cause to DENY the Motion.

## II. BACKGROUND

In 2015, the United States Department of Interior Bureau of Land Management ("BLM"), the United States Department of Agriculture, and the United States Forest Service amended land use plans for federal lands in eleven western states (including

Idaho) to protect the Greater Sage Grouse, its habitat, and to prevent it from being listed as an endangered species.

Plaintiff Tugaw Ranches, LLC, is a cattle ranching operation based in Oakley, Idaho. Tugaw Ranches operates on private and public lands, including on BLM and Forest Service grazing allotments affected by the amended rules. In its Complaint, Tugaw Ranches alleges that the BLM and the Forest Service violated the Congressional Review Act ("CRA") because they failed to submit the land use plan amendments to Congress for review as required.

Defendants filed the instant motion, asserting that this Court lacks jurisdiction to hear this claim because the CRA prohibits judicial review of claimed omissions in violation of the Act.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

///

///

# IV. DISCUSSION

In 1996, Congress enacted the Congressional Review Act ("CRA"), 5 U.S.C. §§ 801-808. The CRA added a new chapter to the Administrative Procedure Act ("APA") that establishes the mechanisms and procedures by which Congress may review and overturn agency rules. Broadly speaking, the CRA sought to restore a measure of accountability in that before an agency rule can take effect, it (the agency) must submit a report to both houses of Congress and the Comptroller General containing a copy of the rule, a concise general statement relating to the rule, and the proposed effective date of the rule. *Id.* at § 801(1).

Once the agency submits a proposed rule, Congress has a set timeframe in which it can review the rule and, if desired, pass a joint resolution voiding the rule. 5 U.S.C. § 802(a). If both houses of Congress pass such a resolution, it goes to the President for his signature or veto. *See I.N.S. v. Chadha*, 462 U.S. 919 (1983). If the President signs the resolution (or if Congress overrides the President's veto) then the rule "shall not take effect (or continue)." *Id.* § 801(b)(1). Moreover, the agency may not reissue the rule or issue a new rule "that is substantially the same" as the rejected rule unless specifically authorized by a law enacted after the resolution disapproving the original rule. *Id.* § 801(b)(2).

At issue today is one provision of the CRA—5 U.S.C. § 805 ("§ 805")—which explains that "no determination, finding, action or omission under this chapter shall be subject to judicial review." *Id.*

Thus, in this case, Defendants do not dispute that they have yet to submit the proposed amendments to Congress as required, but rather that this Court cannot hear a challenge to their failure to do so.

Put simply, Defendants allege that a plain reading of § 805 bars judicial review of their alleged failure to gain congressional approval of the Sage Grouse Amendments, while Tugaw Ranches asserts that the statute as a whole—as well as the legislative history and the strong presumption of judicial review over agency actions—supports its position that this Court does have jurisdiction.

When interpreting a statute, a court's first step is to "determine whether the language at issue has a plain and unambiguous meaning . . . ." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Where the statutory language is unambiguous, the court's inquiry is at an end. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018) (opining that when the plain language is "unambiguous, our inquiry begins with the statutory text, and ends there as well") (internal quotation marks and citations omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341 (citations omitted).

In this case, the Court finds the language of § 805 does not clearly establish that judicial review is unavailable for claims that an agency violated the CRA by failing to submit a proposed rule to Congress. Because the statutory language is not clear, the Court must look to other sources to determine the meaning, intent, and application of § 805. The Court begins with the plain language.

A. Plain and Unambiguous Language

Defendants claim that the language of the statute is clear: "[n]o . . . omission under this chapter shall be subject to judicial review" means just that—no omission is subject to review regardless of who committed the omission. 5 U.S.C. § 805. Claiming that the omission here is their failure to submit the proposed changes to Congress, Defendants claim that judicial review is unavailable. Defendants point to an early case discussing the breadth of § 805, and one Court's[1] determination that "the statute provides for no judicial review of any 'determination, finding, action, or omission *under this chapter*,' not '*by Congress under this chapter*.' The Court must follow the plain English." *Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, No. A 97 CA 421 SS, 1998 WL 842181, at *7 n.15 (W.D. Tex. June 25, 1998) (emphasis in original), *aff'd*, 201 F.3d 551 (5th Cir. 2000). This case, like all the others cited by the parties, is not exactly on point. Defendants' cited language here comes from a footnote in an out of District and out of Circuit case in which the party argued that *only* the actions of Congress were not reviewable. That Court determined that § 805 was not so restrictive that it only included Congressional action. Importantly, however, there is no mention in that decision of how far the provision of non-review applies.

To further its argument, Defendants point back to the APA and its explanation that Congress is not an agency, by definition, that its decisions are not subject to review (5

---

[1] At the end of this section, the Court will fully analyze all court decisions that address § 805, but suffice it to say, this decision is simply persuasive authority not controlling precedent.

U.S.C. § 551), and to a Supreme Court case (*Franklin v. Massachusetts*, 506 U.S. 788 (1992)) in which the Court held that the President's actions are also not subject to review.

Because both Congress' and the President's actions under the APA and CRA are explicitly exempt from review, Defendants assert that the only plausible reading of § 805 is that the agencies themselves are not subject to judicial review—otherwise that section would be meaningless because the other actors in the CRA are already immune.

For its part, Tugaw Ranches contends that the fact that § 805 does not mention agencies cuts against the idea that they are exempt. In its estimation, only those entities that are listed, or otherwise referenced, in the CRA fall under the exemption. Because the President and Congress are listed in the CRA—and have been granted immunity elsewhere—Tugaw Ranches agrees that they are exempt, but in like manner, it contends that actions by the Office of Management and Budget ("OMB") and the Government Accountability Office ("GAO") are also non-reviewable as they too are listed in the CRA.

The Court is not convinced that this matter is as clear as either side asserts.

The simple absence of something does not mean that the opposite is true. The omission of detail in § 805 does not mean that the Court should—as Defendants' suggest—limit non-reviewability to "agency" action because other relevant parties are listed elsewhere as exempt from judicial review. Nor should the Court, however—as Tugaw Ranches suggests—try to find a complete list of those who are exempt as there are numerous other groups and individuals listed in the CRA that Tugaw Ranches has

failed to identify, including the Comptroller General and—at issue here—Federal Agencies.

Simply put, § 805 is not clear and unambiguous. There is no way (by simply looking at the statute itself) for the Court to determine exactly whose actions are subject to judicial review and whose are not.

The Court understands the idea promulgated by the Eastern District of Texas that the plain language of § 805 goes to the CRA as a whole (and thus there is no review of anyone's actions—including agencies); but is concerned with the actual result of such a finding, and the fact that such a finding might conflict with other provisions within the CRA.

For example, the CRA provides that, if Congress and the President enact a resolution disapproving a particular rule, the agency is barred from adopting the same or any "substantially similar" rule. 5 U.S.C. § 801(b). Congress does not itself enforce this provision, as it can disapprove any rule submitted to it regardless of whether it is the same or substantially similar to a prior disapproved rule.[2] Rather, this provision can only operate if courts enforce it against recalcitrant agencies. *See* Michael J. Cole, *Interpreting the Congressional Review Act: Why the Courts Should Assert Judicial Review, Narrowly*

_____

[2] In other words, without review, an agency could continually submit rules and congress could continually reject them, but there would be no adjudicatory function to enforce compliance with the statute itself. This is precisely why the judicial branch exists. Congress, the President, and an agency could go round after round on an issue—and arguably have some modicum of enforcement through pressure, politics, rules, funding, or some other function—but ultimately, it is the Court that must determine if there has been statutory compliance.

*Construe "Substantially the Same," and Decline to Defer to Agencies Under* Chevron, 70 ADMIN. L. REV. 53, 68 (2018). Barring any judicial review whatsoever "would render [the anti-circumvention provision] meaningless." *Id.; See also Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

Furthermore, without review, an agency would frankly have no reason to comply with the CRA—or at least no legal duty. Defendants outright reject this idea and repeatedly state that "congress has numerous options for policing agency compliance without judicial review." Dkt. 26, at 5. But what about third parties? Congress might be able to compel compliance, but what is Tugaw Ranches to do? If Defendants submitted their plans to Congress and Congress and/or the President subsequently approved or rejected said plans, that would be the end of it. But if the agency never submits its plans—*as required*—the Court is troubled with Defendants' position that essentially any rule or law can go into effect without oversight or approval and there is no legal remedy available for an affected third party. *See also* Paul J. Larkin, Jr., *Reawakening the Congressional Review Act*, 41 HARV. J.L. & PUB. POL'Y 187, 230 (2018) (noting that the political branches can always "engage in political wheeling and dealing" but that "[p]rivate parties do not sit at the table in that game. They need the courts to protect them against what Congress and the President have dealt them").

Presumably, Congress could have written this statute to include—or exclude—certain individuals, organizations, or groups. And while it appears relatively clear that the actions of the President and Congress are not subject to review under the CRA, there is nothing to indicate if Courts should give that same level of deference to agencies. Considering this ambiguity, the Court must continue its inquiry.

The Court next turns to other Courts and any relevant findings concerning § 805—specifically whether any have found the language of § 805 is "clear and unambiguous."

At the outset the Court notes that the following cases are only persuasive; not only by definition—as none are from courts within this District or Circuit—but also in substance—as many are factually distinguishable or lack significant analysis.

Defendants rely heavily on the D.C. Circuit's decision in *Montanans For Multiple Use v. Barbouletosi*, 568 F.3d 225 (D.C. Cir. 2009). While their reliance is understandable, the entirety of the D.C. Circuit's analysis of § 805 is three sentences, culminating in a simple finding that § 805 "denies courts the power to void rules on the basis of agency noncompliance with the Act. The language of § 805 is unequivocal and precludes review of this claim—even assuming that the plan amendments qualify as rules subject to the Act in the first place." *Id.* at 229.

District Courts in the D.C. Circuit that have taken up this issue since have—relying on *Montanans For Multiple Use*—followed suit. *See, e.g.*, *Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 346 (D.C. Cir. 2018); *Forsyth Mem'l Hosp. Inc. v. Sebelius*, 667 F. Supp. 2d 143, 150 (D. D. C. 2009),

*aff'd*, 639 F.3d 534 (D.C. Cir. 2011); *Provena Hosps. v. Sebelius*, 662 F. Supp. 2d 140, 155 (D. D. C. 2009).

Numerous other Circuit and District Courts have similarly found that under a plain reading interpretation § 805 precludes judicial review. *See*, *e.g.*, *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt,* 509 F.3d 1259, 1271 n.11 (10th Cir. 2007) ("The Congressional Review Act specifically precludes judicial review of an agency's compliance with its terms."); *United States v. Carlson*, No. CRIM. 12-305 DSD/LIB, 2013 WL 5125434, at *14 (D. Minn. Sept. 12, 2013), *aff'd*, 810 F.3d 544 (8th Cir. 2016) (finding the "great weight of the case law" supports a "plain English" ruling); *United States v. Ameren Missouri*, No. 4:11 CV 77 RWS, 2012 WL 2821928, at *4 (E. D. Mo. July 10, 2012) (noting the plain language of the statute but also questioning whether the challenge would even fall under 5 U.S.C. § 801 *et seq.*); *In re Operation of the Missouri River System Litigation*, 363 F. Supp. 2d 1145, 1173 (D. Minn. 2004) (holding that § 805 precluded judicial review of the U.S. Fish and Wildlife's decision that the designation of certain critical habitat was not a major rule); *United States v. Am. Elec. Power Serv. Corp.*, 218 F. Supp. 2d 931, 949 (S. D. Ohio 2002) (finding that "the language of § 805 is plain" and acts as a "jurisdictional bar" to review, but also questioning whether the enforcement action in question amounted to rulemaking and was covered by 5 U.S.C. §§ 801, *et seq.*, in the first instance); *Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, No. A 97 CA 421 SS, 1998 WL 842181, at *7 (W.D. Tex. June 25, 1998), *aff'd*, 201 F.3d 551 (5th Cir. 2000) (finding that the language "could not be plainer" and the "alleged omission of review under this chapter is not subject to review by this Court"). This final case—as

well as *Carlson*—were both subsequently affirmed in their respective Circuits, however, those Circuit decisions are silent when it comes to § 805.

The Court wishes to highlight—as identified above in some of the parentheticals—that many of these cases based their decision on a plain reading interpretation, *but also*, on other contributing factors such as whether the CRA even covered the rule in question. Additionally, some of the references to § 805 were simply in footnotes without any analysis or explanation.[3] While these cases come to the same general conclusion, these additional factors—contributing reasons for non-reviewability and lack of analysis—do not solidify a course of action for the Court today.

Contrary to the above cases, other Circuit and District Courts have found that § 805 does not preclude judicial review of agency action. *See*, *e.g.*, *Natural Res. Def. Council v. Abraham*, 355 F.3d 179, 201-02 (2d Cir. 2004) (reviewing a rule's effective date under the CRA); *Liesegang v. Sec'y of Veterans Affairs*, 312 F.3d 1368, 1373-76 (Fed. Cir. 2002) (same); *Ctr. for Biological Diversity v. Zinke*, No. 17-cv-00091, 2018 WL 2144349, at *10 n.89 (D. Alaska May 9, 2018) (holding judicial review is available for Department of the Interior's alleged violation of the CRA); *United States v. Reece*, 956 F. Supp. 2d 736, 743-44 (W.D. La. 2013) (an agency's failure to submit a rule to Congress under the CRA can be raised as a defense to enforcement action); *United States v. S. Indiana Gas & Elec. Co.*, No. IP99-1692-C-M/S, 2002 WL 31427523, at **4-6

---

[3] Such is the case in *Texas Sav. & Cmty. Bankers Ass'n* and *Via Christi Reg'l Med. Ctr., Inc.*

(S.D. Ind. Oct. 24, 2002) (an agency's failure to submit a rule can be raised under the APA). *See also United States v. Nasir*, No. 5:12-CR-102-JMH, 2013 WL 5373691, at *6 (E.D. Ky. Sept. 25, 2013) (discussing the competing interpretations of § 805, the lack of "significant discussion" in most instances, and refusing to weigh in on the debate because the party in that case had already complied with the CRA).

As with the cases cited in favor of non-reviewability, most of these cases cited in favor of reviewability do not dissect the intricacies of § 805. Additionally, in many instances, the respective Courts found that they had authority under § 805 and another statute[4] or that § 805 did not even apply.[5] Regardless, it does seem that many Courts have found agency "actions"[6] are reviewable.

*S. Indiana Gas & Elec. Co* contains the most comprehensive discussion on § 805, but is unpublished, and—as with all the other cases cited herein—only persuasive. Nevertheless, the Court does find the following discussion insightful:

> As this Court reads 5 U.S.C. § 805, ("No determination, finding, action, or omission under this chapter shall be subject to judicial review"), it

---

[4] For example, in *Abraham*, the Court found that it had authority under 42 U.S.C. § 6306(b)(1) (2003) to review the matter; in *Liesegang*, the Court found it had authority under 38 U.S.C. § 502; and in *Reece*, the Court found it could review the case under both § 805 and § 877.

[5] In *Zinke*, while the Court held that they could review the claim, it pointed out that the plaintiffs in that case were "not seeking review of action taken under the CRA" but rather "that DOI, at the behest of Congress, acted *ultra vires* in taking action beyond the authority provided by the CRA. Therefore, § 805's restriction on judicial review does not apply." *Zinke*, 2018 WL 2144349 at *10.

[6] Neither party discusses this term (or any of the specific terms in § 805) but the word "action" seems extremely broad. Presumably § 805 covers the whole process of agency rule changes under the CRA, i.e. all actions by those involved in the process.

is susceptible to two plausible meanings: (1) as *Texas Savings* and *American Electric* concluded, Congress did not intend for courts to have any judicial review of an agency's compliance with the CRA; or (2) Congress only intended to preclude judicial review of Congress' own determinations, findings, actions, or omissions made under the CRA after a rule has been submitted to it for review. Under the first interpretation, which *Texas Savings* and *American Electric* adopted, agencies could evade the strictures of the CRA by simply not reporting new rules, and courts would be barred from reviewing their lack of compliance. This result would be at odds with the purpose of the CRA, which was to provide a check on administrative agencies' power to set policies and essentially legislate without Congressional oversight. The CRA has no enforcement mechanism, and to read it to preclude a court from reviewing whether an agency rule is in effect that should have been reported would render the statute ineffectual.

Moreover, the language of the statute precludes judicial review of a "determination, finding, action, or omission under this chapter . . ." Agencies do not make findings and determinations under this chapter; Congress, on the other hand, is required to make a number of findings and determinations under the CRA. Therefore, it is logical to interpret the judicial preclusion language as barring review of the determinations, findings, actions, or omissions made by Congress after a rule is submitted by an agency, but not extending the bar of judicial scrutiny to questions of whether or not an agency rule is in effect that should have been reported to Congress in the first place.

*Id.* at *5. As noted, the CRA does not define much of the language used in § 805, but the Court agrees that certain terms (such as findings, determinations etc.) appear to be geared towards Congressional duties under the act rather than agencies.

The Court believes it has identified every case that discusses § 805 in any fashion and, unfortunately, clarity is not to be found. While the weight of the cases *seems* to be in

favor of non-reviewability, this idea comes from a mere two Circuits[7] and a handful of District Courts *none of which are binding on this Court*. Conversely, there is at least one Circuit[8] and a handful of other districts that appear to have found some measure of judicial review available under the CRA.

In short, this matter is far from settled law, § 805 is not clear and unambiguous as required, and in light of this ambiguity, the Court must continue its inquiry by looking at the legislative history.

## B. Legislative History

"To the extent that the text of [a] statute is not clear, it is necessary to investigate the legislative history to discover the intent of Congress." *Exxon Mobil Corp. v. U.S. E.P.A.*, 217 F.3d 1246, 1251 (9th Cir. 2000).

When the CRA went into effect in 1996, sponsors from both political parties entered an identical joint statement into the Congressional Record (for both the House and the Senate) explaining their shared understanding of § 805. 142 Cong. Rec. S3683; 142 Cong. Rec. 6922-6926. This statement appears to confirm that Congress *did not* intend for the CRA to act as a bar to judicial review of an agency's failure to submit rules to Congress as required.

---

[7] Arguably, there are two more Circuits that have addressed § 805, however, as noted, simply affirming a decision that discussed § 805—without discussing the provision itself—is limiting in application.

[8] Although here too, the Second Circuit in *Abraham* found that it had authority under another statute and did not specifically discuss § 805. That being said, the result—that it reviewed a rule's effective date under the CRA—is somewhat persuasive.

The joint statement outlines that "the major rule determinations made by the Administrator of the Office of Information and Regulatory Affairs of the Office of Management and Budget are not subject to judicial review." 142 Cong. Rec. S3686. "Nor may a court review whether Congress complied with the congressional review procedures in this chapter." *Id.* However, in delineating between those non-reviewable entities and agencies, the joint statement notes that § 805 "does not bar a court from giving effect to a resolution of disapproval that was enacted into law"—by reviewing whether a future rule conforms to the CRA's ban on substantially similar rules—and, most relevant here, that "[t]he limitation on judicial review *in no way prohibits a court from determining whether a rule is in effect*." *Id.* (emphasis added). Instead, Congress "expect[s] that a court might recognize that a rule has no legal effect due to the operation of subsections 801(a)(1)(A) or 801(a)(3)." *Id.*

Defendants do not dispute this history, but rather its timing. Because this joint statement slightly postdates the CRA's actual enactment—the statement was issued 20 days *after* the CRA went into effect—Defendants contend it is "post-enactment legislative history" and should be giving very little credence. While the idea of "post-enactment legislative history" is important (after all, it is true that memories fade or a person's position may change once a rule, statute, or law has been "in action") the de minimus time that elapsed here is of little consequence. Additionally, even if this was "post-enactment legislative history," the Court can still give it any weight it deems appropriate. *See United States v. Woods*, 571 U.S. 31, 47-48 (2013) (although not formal legislative history, a post-enactment statement from Congress should be considered "to

the extent it is persuasive"); *cf. Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (giving weight to an agency's reasonable interpretation of a statute to the extent it has the "power to persuade").

Importantly, it appears that this "post-enactment" statement was the intended plan from the beginning. During Congress' consideration of the CRA, one of the sponsors explained that enacting the final version of the statute as an amendment to an existing bill would preclude "a conference report or managers' statement prior to passage" 142 Cong. Rec. H3005 (statement of Mr. McIntosh), but that the sponsors intended to draft a statement "that we can insert in the Congressional Record at a later time to serve as the equivalent of a floor managers' statement." *Id.* Thus, when Congress voted, it did so anticipating that the sponsors would submit the joint statement confirming their shared, contemporaneous understanding of the CRA.

Additionally, this joint statement explains that the bill "was the product of negotiation with the Senate and did not go through the committee process." 142 Cong. Rec. S3683 (statement of Mr. Nickles). Consequently, "no other expression of its legislative history exists" other than a few short statements during the debates. *Id.* To cure this deficiency, the sponsors "intended" their joint statement "to provide guidance to the agencies, the courts, and other interested parties when interpreting the act's terms." *Id.*

Finally, on the CRA's tenth anniversary, the House Judicial Committee considered the question of whether the CRA precludes judicial review and found that while the joint statement slightly postdated the law's enactment, "[i]n the absence of committee hearings

and the sparse commentary during floor debate, these [post-enactment] explanations represent the most authoritative contemporary understanding of the provisions of the law." *Id*. Ultimately, the Committee concluded that the joint statement "arguably merits close consideration by a reviewing court as a contemporaneous, detailed, in-depth statement of purpose and intent by the principal sponsors of the law." *Id.*

Defendants vehemently oppose the Court considering the statement of one subcommittee ten years after the CRA went into effect, but the fact remains that the general understanding (originally, and ten years later) was that the joint statement would be considered authoritative—or at the very least instructional—when questions regarding the CRA arose.

Upon review, the Court is persuaded by the contemporaneous legislative history surrounding the enactment of the CRA. It appears clear that those who promulgated it understood that actions taken by certain actors would not be reviewable, but that this non-reviewability did not extend to all CRA actors and that specifically agency action would be reviewable.

C. Policy Concerns

Finally, in conjunction with the Court's reading of the statute in its entirety and giving deference to the legislative history, the Court is troubled by general policy concerns related to Defendant's interpretation of § 805. The whole purpose of the APA—and subsequently the CRA—was that of accountability. *See Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988) ("[I]t is undisputed" that the APA "was intended to broaden the

avenues for judicial review of agency action by eliminating the defense of sovereign immunity . . .").

The Supreme Court and Ninth Circuit have recognized a "strong presumption that Congress intends judicial review of administrative action." *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998) (quoting *Traynor v. Turnage*, 485 U.S. 535, 542 (1988)); *see Reno v. Catholic Social Servs., Inc.*, 509 U.S. at 63-64 ("[T]here is a 'well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action.'") (quoting *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 496 (1991)). Even very recently, the United States Supreme Court has reaffirmed that there is "a strong presumption favoring judicial review of administrative action." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, No. 17-71, 2018 WL 6174253, at *8 (U.S. Nov. 27, 2018). This presumption can only be rebutted if "the relevant statute precludes review" or "the action is committed to agency discretion by law." *Id.; See also*, *Moapa Band of Paiute Indians v. U.S. Dep't of Interior*, 747 F.2d 563, 565 (9th Cir. 1984) ("Preclusion of judicial review is not lightly inferred, and usually will not be found absent a clear command of the statute."). This presumption reflects the Supreme Court's concern for the consequences if an agency's "compliance with the law would rest in the [agency's] hands alone." *Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct. 1645, 1652 (2015).

Although not casting aspersions on agencies' "fidelity to law," the Court "know[s]—and know[s] that Congress knows—that legal lapses and violations occur, and especially so when they have no consequence." *Id.* at 1652-53. Accordingly, courts should be extremely hesitant to find judicial review unavailable. *Id.* at 1651. Congress

"rarely intends to prevent courts from enforcing its directives to federal agencies" as this would leave the "agency to police its own conduct" with no consequences if the agency failed to do so. *Id.*

In this case, Defendants claim that the plain language of § 805 meets the requisite rebuttable presumption under *Weyerhaeuser* in that it [the relevant statute] "precludes review." As the Court has outlined, however, that presumption—i.e. that reading of the statute—is not entirely clear. Reading judicial review out of the CRA foils its primary purpose. Congress enacted the APA and CRA to act as a check and balance on agency action. Reading the statute in such a way as to foreclose that option—even more specifically: to foreclose that option just for the agencies—arbitrarily gives said agencies more power than originally intended. An agency may only act within the bounds of its statutory authority and the Court is uncomfortable allowing an agency a "pass" when it elects—for whatever reason—to not submit rule changes to Congress as required. S*ee* Paul J. Larkin, Jr., *The Trump Administration and the Congressional Review Act*, 16 GEO. J.L. & PUB. POL'Y 505, 518 (2018) (noting that without judicial review "an agency would be able to violate the CRA with impunity by declining to submit a rule to Congress. That would make nonsense of the statute. It also would violate the Constitution by authorizing government agencies to act in a lawless manner.").

Here, were the Court to accept Defendants position, it would leave Tugaw Ranches without remedy—and any accountability in the CRA would be null and void. The strong presumption of judicial review absent clear direction otherwise is persuasive

to the Court. In the absence of a clear and unambiguous agency exception in § 805, the Court cannot accept a result that ultimately defeats the purpose of the act itself.

## V. CONCLUSION

The language of § 805 is not clear and unambiguous. Although at first blush § 805 appears to be a blanket prohibition on all judicial review of *any* actions taken by anyone under the CRA, such un-checked authority does not make sense, defeats the general purpose of the act, is contradicted by the legislative history, and ultimately leaves third parties without any remedy at law against violations of the act itself. Furthermore, what scant caselaw is available on the matter is conflicting, shallow in reasoning and analysis, and only persuasive in nature.

As noted, § 805 simply states that "[n]o determination, finding, action, or omission under [the CRA] shall be subject to judicial review," yet fails to describe whose determination, finding, action, or omission is prohibited from judicial review. One could interpret this as applying to all parties acting under the CRA (i.e., promulgating agencies, Congress, OMB, GAO, and the President), or one could interpret this solely as precluding judicial review of only certain groups' actions under the CRA (the President and Congress for example).

Upon review, the Court finds that § 805 does not clearly prohibit judicial review of agency action under the CRA and that it has jurisdiction to hear the claims at issue in this case.

///

///

## VI. ORDER

**IT IS ORDERED:**

1.    Defendants' Motion to Dismiss (Dkt. 14) is DENIED.


DATED: February 25, 2019

David C. Nye
Chief U.S. District Court Judge